GEORGE C. GENET, Appellant, *v.* THE CITY OF BROOKLYN, Respondent.

The provisions of the statutes in reference to street openings in the city of Brooklyn (Chap. 384, Laws of 1854 ; chap. 63, Laws of 1862 ; chap. 631, Laws of 1868), contemplate and authorize the application of assessments for benefits upon residues of lots, parts of which are taken for a street improvement in reduction of awards for the parts taken, and that the liability of the city shall be limited to the excess of award over assessment ; but in ascertaining such liability, each lot or parcel is to be separately considered, so that an assessment on one lot may not be applied to reduce an award in respect to another, where they are separately valued and assessed, although both are owned by the same person.

The authority thus given to reduce an award, by an assessment for benefit on the residue of the same lot, is not in conflict with the constitutional prohibition against taking private property for public use without just compensation. (State Const., art. 1, § 6.)

It does not render the act obnoxious to the constitutional provision that by it the fixing of the district of assessment and the assessment for benefits are distinct proceedings, conducted by different bodies, or because it requires the commissioners of estimate and assessment to assess the whole expense of the improvement upon the district of assessment fixed by the park commissioners.

The fact that the act of 1868 for the widening of Sackett and other streets in the city of Brooklyn (Chap. 631, Laws of 1868) requires the commissioners therein named, before an assessment is made, to fix a district of assessment to which the assessment shall be limited, and that the whole expense, including the damage to land-owners, shall be assessed upon the lands embraced in the district, making the assessment relatively equal as between the different parcels of land, and may not limit the assessment to the actual benefit to each parcel, and then authorizes an assessment to be applied in satisfaction of an award for a portion of the lot taken for the improvement, does not render the act obnoxious to said constitutional provision. The assessment authorized is an exercise of the legislative right of taxation, all the incidents of which are within the control of the legislature, and in respect to which its determination is final, and the application of the sum assessed in satisfaction of an award for land taken is just compensation within the meaning of the Constitution.

(Argued April 30, 1885 ; decided June 9, 1885.)

APPEAL from decision of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 8, 1884.

This action was brought by plaintiff as grantee and assignee of one Davis to have certain assessments for the widening of Sackett street, in the city of Brooklyn, upon lands conveyed by said Davis, set aside as illegal and void ; or, in case the validity of the assessment should be sustained, to recover the amount of certain awards made to said Davis for lands taken for said improvement.

The material facts are stated in the opinion.

*George C. Genet*, appellant, in person. The board of assessors had no right to take the awards made to Davis and by

him assigned to plaintiff to pay any assessment they might impose upon lands that were alleged to or that actually did belong to Davis, as he was not personally liable to pay the assessment, for it was upon the land and not on the owner. (*Hatch* v. *Mayor, etc.*, 82 N. Y. 442; *Matter of Woolsey*, 95 id. 138; *People* v. *Mayor of Brooklyn*, 4 id. 419; *Matter of Flatbush Ave.*, 1 Barb. 286; *Sharp* v. *Speir*, 4 Hill, 76.) The city of Brooklyn could not offset an assessment against an award without the consent of the party interested. (*Hatch* v. *Mayor, etc.*, 82 N. Y. 436; *Sage* v. *Brooklyn*, 89 id. 190.) The burden of proving that there had been a preliminary valuation or assessed value of the ground assessed, and that the assessment did not exceed one-half the value of the ground assessed, rested on the city. (*In re Cram*, 79 N. Y. 452, 461; *In re Second Ave. Ch.*, 66 id. 395; *Van Ness* v. *Bk. U. S.*, 10 Pet. 449; *Sharp* v. *Johnson*, 4 Hill, 92; *Sharp* v. *Speir*, id. 76.) It comes within the jurisdiction of this court, as a court of equity, to restrain the collection of the whole assessment or of so much as exceeds one-half the value of the property assessed as it may determine. It is an apparent lien on the property assessed, not authorized by statute, being in excess of one-half of the value of the property assessed. (*Sewell* v. *St. Paul*, 20 Minn. 511; Desty on Taxation, 1425.) Being an apparent lien, but the assessed value not being inserted in the assessment-roll, evidence *dehors* the record is necessary to prove the illegality complained of. (*Strausburgh* v. *Mayor, etc.*, 87 N. Y. 455; *Newell* v. *Wheeler*, 48 id. 486.) The question involves the validity of the whole assessment upon all the property assessed, wherefore a court of equity will assume jurisdiction. (*Norton* v. *Boston*, 119 Mass. 194.) It is a mistake arising from accident, surprise and misplaced confidence. (Story's Eq., § 110; 87 N. Y. 445.)

*John A. Taylor* for respondent. The only liability which rests upon the city under the provisions of the Sackett Street Act and of the portions of the charter made applicable thereto, is the excess of the aggregate balances of awards over the aggre-

gate balances of assessments. (Laws of 1868, chap. 631; Laws of 1854, chap. 384, title 4; Laws of 1862, chap. 63, § 17.) The competency of such statutes offsetting benefit against advantage as the proceeding went forward has been abundantly established by the courts. (*Livingston* v. *Mayor, etc.,* 8 Wend. 102; *Betts* v. *Williamsburg,* 15 Barb. 257; *People* v. *Mayor, etc.,* 4 N. Y. 439.) Since the plaintiff rests his ground of recovery upon a determination of the commissioners of estimate and assessment under this statute, he is brought within the jurisdiction of that board to finally dispose of his claims against the city in the manner already indicated, and cannot impeach the competency of that tribunal to proceed in the manner set forth in the statute, and subject to the confirmation by the court to render the final judgment to be indicated by their balance of assessment over the award. (*Leroy* v. *Mayor, etc.,* 20 Johns. 438; *Meserole* v. *Brooklyn,* 8 Paige, 204; *Matter of Anthony Street,* 20 Wend. 618.)

*Joshua M. Van Cott* for intervenors. The Constitution restricts the right of eminent domain by prescribing the measure and mode of compensation. (Const., art. 1, §§ 6, 7.) When the same jury or commissioners are to award damages and assess for benefits, such benefits may be considered and allowed in fixing the award. (*Livingston* v. *Mayor, etc.,* 8 Wend. 85.) But only these constitutional arbiters can determine the benefit so to be deducted in awarding the damage. (*People* v. *Brooklyn,* 4 N. Y. 419; *Matter of Church,* 92 id. 1, 4; *Hassen* v. *City of Rochester,* 65 id. 516; *Litchfield* v. *Vernon,* 41 id. 123; *Gordon* v. *Cones,* 47 id. 608; *Matter of Van Antwerp,* 56 id. 261; *Mayor of Davenport,* 92 id. 604, 616; Cooley on Taxation, 110–113; *Gillette* v. *City of Denver,* 21 Fed. Rep. 823; 67 N. Y. 528; *Betts* v. *Williamsburg,* 15 Barb. 225; *L. I. R. Co.* v. *Bennett,* 10 Hun, 91; *Matter of R. Co.* v. *Sheeney,* 11 Weekly Dig. 275; *Ryder* v. *Stryker,* 2 Hun, 115; 63 N. Y. 136.) The charter acts do not, *ex proprio vigore,* operate a total extinguishment or a partial reduction of awards made under special acts, such as the Sackett Street and North

Second Street Acts, and leave only a *plus* of award over assessment or of assessment over award.    (94 N. Y. 287 ; 18 Weekly Dig. 123 ; *Livingston* v. *Mayor, etc.*, 8 Wend. 85 ; *Watt* v. *Mayor, etc.*, 1 Sandf. 23 ; *Fisher* v. *Mayor, etc.*, 3 Hun, 648 ; 67 N. Y. 74 ; *Hatch* v. *Mayor, etc.*, 82 id. 436 ; *Genet* v. *Brooklyn*, 94 id. 645.)

ANDREWS, J.    The act chapter 631 of the Laws of 1868 for the widening of portions of Sackett and other streets, in the city of Brooklyn, defined the land to be taken for the improvement, and appropriated it for public use.    It made provision for the appointment of commissioners to estimate and ascertain the expense of the improvement and the damages sustained by the land-owners for the lands taken, and also for the apportionment and assessment of such damages and expenses upon a limited assessment area to be fixed by the commissioners of Prospect park.    (§§ 4 and 5.)    It provided that the proceedings subsequent to the appointment of commissioners of estimate should be governed by the laws then in force relating to street openings in the city of Brooklyn, so far as they were not inconsistent with the act.    (§ 7.)    There was no express provision embodied in the act itself for paying the land-owners for the lands taken.    But the duty of payment was cast upon the city by force of section 16 of the fourth title of the charter of 1854, which was incorporated into the act of 1868 by force of the seventh section.    This was expressly adjudged in the case of *Sage* v. *Brooklyn* (89 N. Y. 189).

There are two questions upon the determination of which this case depends, not involved, or at least not decided, in *Sage* v. *Brooklyn*.    The plaintiff sues to recover from the city of Brooklyn the sum of $9,576, being the aggregate damages sustained by his predecessor in title and interest by the taking for the improvement of a part of several city lots owned by him, embraced in a single tract, as estimated by the commissioners of estimate appointed under the act, whose report was confirmed November 24, 1869.    Each lot was separately described and numbered in the report, and the value of the part

taken from each was separately stated. The same commissioners who estimated the damages, after their report thereon was confirmed, proceeded, in pursuance of the further authority conferred by the act, to assess the expense of the improvement upon the property benefited within the district of assessment. They separately assessed the residue of each of the lots above referred to — that is, the part of each lot not taken for the improvement — for benefits. The assessment for benefit on such residues in some cases exceeded, and in other cases was less, than the damages previously awarded for the parts taken. The commissioners' report of assessments was tabulated, as required by section 15 of the charter of 1854, as amended by chapter 63 of the Laws of 1862, and in their report the commissioners stated in respect to each lot of which a part had been taken, the amount awarded for damages for the part so taken, the assessment for benefit on the residue, and the balance of award over assessment, or of assessment over award, as the case might be. In respect to five lots, the awards exceeded the assessments thereon in the sum of about $1,035; and in respect to five other lots the assessments exceeded the awards by about the sum of $1,020. The final report of the commissioners was confirmed February 28, 1870.

The two questions to be determined are, *first*, whether, by the true construction of the statute of 1868, a land-owner, part of whose land was taken for the improvement, is entitled to recover the whole sum estimated by the commissioners in their first report as his damages for the land taken, or only the balance of award over assessment stated in their final report; and whether, in the case of several lots owned by the same person, but treated in the proceedings as distinct and separate parcels in respect to some of which the assessment exceeds the award, and in others the award exceeds the assessment, the city is entitled to have the balances each way aggregated and set off the one against the other. The other question is, whether the scheme of the statute for ascertaining and providing compensation to the land-owners satisfies the constitutional pro-

vision and guaranty that private property shall not be taken for public use without just compensation. (Const., art. 1, § 6.)

The general scheme of street openings in the city of Brooklyn seems to contemplate that assessments for benefits upon residues of lots, part of which are taken for the improvement, shall be applied to reduce and limit the awards for the parts taken, and that the liability of the city to pay awards to the land-owner in such cases shall be limited to the excess of award over assessment; but that in ascertaining such liability each lot or parcel is to be separately considered, so that an assessment on one lot will not reduce an award in respect to another lot, although both lots may be owned by the same person. By the charter of 1854 (Laws of 1854, chap. 384), power was conferred on the common council to cause streets and avenues to be opened under certain limitations, and to fix a district of assessment. The act provided for the appointment of commissioners of estimate and assessment, and it was made their duty to ascertain the damages for land taken, and to assess the expenses of the improvement upon the land embraced in the district of assessment according to benefit. (Tit. 4, §§ 3 and 6.) The commissioners were required to designate in their report the pieces of land to be taken by the map number, and any residues; the pieces assessed for benefits; the names of the persons interested in the property taken or assessed; the awards made; the amount assessed on each piece of land, and the balance of award over assessment, or of assessment over award in each case. (§ 7.) In case part only of the land of any person should be taken, the residue was subject to assessment for benefit (§ 9), and it was provided that when only a part was required, the excess of damages for the part taken over the assessment for benefit on the residue "shall be assessed and be a lien on other lands and premises according to the estimated benefit to be derived by them from the improvements." Upon the final confirmation of the report of the commissioners, the common council was authorized to cause the improvement to be made (§ 15), and by section 16, it was made the duty of the comptroller to pay to the persons to whom damages

were awarded in the report of the commissioners, the amount of such damages, without deduction by way of "fee or commissions." These provisions in the act of 1854 plainly indicate that it was the intention that the assessment on the residue of a lot, for benefit, should be applied by the commissioners in reduction of the estimated value of the part taken, and that the award to be paid by the city, under section 16, was the balance remaining after such application. It was to accomplish this purpose that the statute required that the balances to be received, and to be paid respectively, should be stated by the commissioners in their report. Any other construction would leave the act incomplete, since by the tenth section it is only the excess of damages which is to be assessed and which is made a lien upon other lands and premises. The amendment of 1862 (Laws of 1862, chap. 63) separated the functions of the commissioners of estimate and assessment, which, under the charter of 1854, as has been seen, were united in the same persons. By the amendment the damages for land taken were to be ascertained by commissioners, and the assessment was to be made by the board of assessors. (§§ 14, 17.) But the provision for ascertaining and stating balances was preserved, that duty being devolved upon the assessors, and it was only upon confirmation of their report that the rights of land-owners to awards became fixed. There was no departure in the act of 1868, under which the proceedings in question were taken, from the policy of the Charter Acts, that awards should be reduced and limited by assessments on residues. Under the act of 1868, both awards and assessments were to be made by the same commissioners as under the charter of 1854, but the awards were to precede the assessment. The expense of the improvement was to be determined before the assessment should be made. After the report of the commissioners estimating the expense of the improvement and the damages of the land-owners had been made and confirmed, the same commissioners were then to proceed to make the assessment, and in making their assessment and report, the provisions of the Charter Acts are to govern when not inconsistent with the act of 1868. The form of the report, including the

stating of balances, is governed by the Charter Acts, and the same policy of reducing awards by assessments, is by force of the seventh section applied to proceedings under the act of 1868. It is insisted by the counsel for the plaintiff, and it is conceded by the counsel for the city of Brooklyn, that under the Improvement Acts an assessment is not a personal charge against the owner of the land, and is enforceable only by a proceeding *in rem*. against the land assessed. The exemption of the owner of land from personal liability for an assessment does not, however, conflict with the policy of charging against an award, an assessment against a residue. An assessment for benefit proceeds on the assumption that the land assessed is increased in value by the improvement, and the extinguishment of the award in whole or in part by the assessment relieves the land assessed from the burden of the assessment. In theory the canceled assessment is the exact equivalent of the amount by which the award is reduced. But we think the court below erred in aggregating the balances of awards and the balances of assessments, and offsetting the one aggregate against the other. The lots were separately valued and separately assessed. In cases where the assessment exceeds the award, the owner may prefer that the land should be sold for the assessment rather than pay the lien. This we think he has the right to do. The statute only contemplates the reduction of an award by an assessment when both relate to the same lot, and the balance is to be ascertained and struck by the commissioners and embodied in their report. The plaintiff was not personally bound to pay the assessments, and no general right of set-off is given by the act, and in the absence of a statutory provision we perceive no equity upon which such right can rest. (See *Hatch* v. *Mayor, etc.*, 82 N. Y. 436.)

The constitutional objection is based upon the claim that the authority given to the commissioners of assessment by the act of 1868, to reduce the award for the land taken, by the assessment for benefit on the residue of the same lot or parcel, is not just compensation within the constitutional requirement. It is not claimed that actual benefit to a residue of land owned

by a person whose land has been taken in part for a local improvement may not, if the legislature so direct, be set off against the value of the land taken, and the money payment limited to the balance of the award remaining after such application. This course has been sanctioned by a uniform course of legislative and judicial precedent, commencing at an early period. By the Street Opening Act relating to the city of New York, re-enacted in the Revised Laws of 1813 (2 R. L., 408) it was provided (§ 178) that the commissioners of estimate and assessment shall proceed to make a just and equitable assessment of the loss or damage to any person by reason of the taking of land, over and above the benefit or advantage, or of the benefit and advantage over and above the loss and damage, and that the commissioners " should estimate and report the excess and surplus only of the said loss and damage over and above the value of said benefit and advantage, as and for the compensation and recompense to such owner or owners for his loss or damage, etc., and for relinquishing the said lands," etc. The validity of the mode of compensation provided by this act was considered in the case of *Livingston* v. *Mayor, etc.* (8 Wend. 85), and the decision in that case has been frequently approved. (*People* v. *Mayor, etc.*, 4 N. Y. 435 ; *Betts* v. *Williamsburgh*, 15 Barb. 255 ; *L. I. R. R. Co.* v. *Bennett*, 10 Hun, 91.) The principle of the New York act has been incorporated into very many of the acts subsequently passed authorizing the laying out and opening of streets in cities and villages. But the particular point of objection now made is that the statute of 1868 does not limit the reduction of the award by the actual estimated benefit resulting from the improvement to the lands of the owner other than those taken, but that under the scheme of the statute the assessment for benefit may exceed the actual, intrinsic benefit to the land assessed, and it is claimed that a law permitting an award to be reduced by the deduction of such arbitrary sum, not measured by actual benefit, does not provide just compensation within the purview of the Constitution. The facts upon which the argument proceeds may be briefly stated. The act requires the commis-

sioners of Prospect park, before any assessment is made, to fix
a district of assessment, beyond which the act declares the
assessment shall not extend. (§ 5.) The whole expense of the
improvement is to be estimated by the commissioners of esti-
mate and assessment, including the damage to the land-owners.
(§.16.) When this estimate is made and confirmed, the com-
missioners of estimate and assessment are then required to
assess the amount so ascertained upon the lands embraced in
the district of assessment which they deem benefited by the
improvement, and as they shall deem just and equitable. (Id.)
The argument is that under this plan the whole expense must
be assessed upon the lands embraced in the assessment district
fixed by the park commissioners, although the aggregate bene-
fit to such lands from the improvement may not, in fact, or in
the judgment of the commissioners of assessment, equal the
aggregate expense; the only duty resting upon the commis-
sioners being to make the assessment relatively equal and just
as between the different parcels in the assessment district. So,
as is claimed, it may result that the assessment on each parcel
may exceed the actual benefit thereto. It is insisted that the
reduction of an award by applying thereon an assessment not
measured by actual benefit is not just compensation.

We think the argument fails in omitting to separate the two
powers exercised by the legislature in framing the act of 1868,
viz.: the power of taxation, and the right of eminent domain.
The constitutional requirement that just compensation shall be
made for lands taken for public use must be absolutely per-
formed, and a mere colorable compliance will not satisfy the
constitutional guaranty. The right to compensation is the
right of the citizen whose land is taken, which the legislature
can neither ignore nor deny. The power of taxation on the
other hand is vested in the legislature and is practically abso-
lute, except as restrained by constitutional limitations. The
power of taxation being legislative, all the incidents are within
the control of the legislature. The purposes for which a tax
shall be levied; the extent of taxation; the apportionment of
the tax; upon what property or class of persons the tax shall

operate; whether the tax shall be general or limited to a particular locality, and in the latter case, the fixing of a district of assessment; the method of collection, and whether the tax shall be a charge upon both person and property, or only on the land, are matters within the discretion of the legislature and in respect to which its determination is final. (*Livingston* v. *Mayor, etc., supra; People* v. *Mayor, etc.,* 4 N. Y. 419; *Thomas* v. *Leland,* 24 Wend. 65; *Town of Guilford* v. *Sup'rs of Chenango,* 13 N. Y. 143; *In re Church,* 92 id. 1.)

There is no constitutional guaranty that taxation shall be just and equal, although a law plainly departing from the principle of equality in the distribution of public burdens, would be justly obnoxious as contrary to natural equity, and as practical confiscation, but the remedy must ordinarily be found in an appeal to the justice of the legislature. The principle of local assessments for public municipal improvements has been recognized and applied during the whole history of the State, although its absolute justice has been sometimes questioned. The legislature may itself fix a district of assessment, or the power may be delegated by the supreme legislative body to the authorities of subordinate political and municipal divisions, or other official agencies, as may also the incidents of the power, such as the apportionment and distribution of the tax, as between the persons and property upon which it is laid. The learned counsel for the intervenors is compelled to admit that the legislature may distribute the burden of public improvements on its own notions of policy, its own sense of justice, and its own assumptions of benefit.

The imposition of local assessments for benefits is an exercise of the taxing power (*People* v. *Brooklyn, supra; Matter of Van Antwerp,* 56 N. Y. 261; *Litchfield* v. *Vernon,* 41 id. 123), and it is clear that the legislature may, in its discretion, make assessments a personal charge against the owners of the land assessed, and impose upon them the duty of payment. The assessment district, under the act of 1868, was fixed by the park commissioners, under its authority, and although the act does not in terms require them to include therein all the

property which, in their judgment, would be specially benefited by the improvement, this is the fair intendment. In executing this authority the commissioners may have erred in judgment, as the legislature might have done if it had itself defined the district of assessment. But the judgment of the commissioners was final, unless it was subject to revision in a direct proceeding in review, as to which it is not necessary to inquire. The assessments imposed upon the lands of the plaintiff's grantor, was, as has been said, a tax, and represented the proportion of the aggregate sum which, in the judgment of the commissioners exercising by delegation the power to distribute the tax, should be charged upon the several parcels as their respective contributions to the aggregate expense. Assuming that the charge exceeded the benefit, it was nevertheless made under the authority and direction of the legislature in the exercise of an undoubted legislative power, and it cannot be invalidated by proof that the charge was unjust or unequal, or even arbitrary. Bringing together then the two proceedings under the act of 1868, we are of opinion that there is no constitutional objection to a legislative direction setting off against an award made to an individual for lands taken for public use, an assessment for benefit against his other lands made in the same proceeding. The act provides in the first instance, for the ascertainment, through constitutional commissioners, of the full value of the land taken. It next provides for the assessment by the same commissioners, acting as representatives of the taxing power, of the whole expense of the improvement upon a limited district, defined by the commissioners of Prospect park. There can be no doubt that the assessment, when made, became a valid charge on the lands assessed. It was competent for the legislature to have made the owners personally liable for the assessment. It did not adopt this general policy. But in respect to the owners of lands taken, and also of lands assessed, it declared, in substance, that the claim for compensation ascertained in the mode defined by the Constitution, should be satisfied in whole or *pro tanto* by the satisfaction, in the manner pointed out by the statute, of a valid and legal

charge for benefit imposed upon his other lands. This, we think, was just compensation within the principle of *Livingston* v. *Mayor, etc.* (*supra*), and the cases following it. If there is any departure from sound principle in the method of adjusting compensation provided in the act of 1868, it is sanctioned by a long line of legislative and judicial precedents which the court is not at liberty to disregard.

There are no other questions which require particular notice. The result is that the judgment should be reversed for the error of the court below in aggregating the balances and setting off the one aggregate against the other. The subtractions in the copy of the tabulated report, as printed, seem to be inaccurate. Upon a new trial the parties will have an opportunity to correct any amendable error in the computation.

All concur, except MILLER and DANFORTH, JJ., not voting.

Judgment reversed.