REINHARDT *et al. v.* CITY OF BUFFALO.

*(Superior Court of Buffalo, Trial Term. January 10, 1891.)*

**1. EMINENT DOMAIN—COMPENSATION—OPENING STREET.**
A land-owner opened an alley through his land, and sold lots abutting thereon, and buildings were erected on the lots. The city did not accept the alley so opened,

and the land-owner was taxed therefor as private property. Afterwards the city opened a street along the line of and including the alley in question. *Held,* that the owner was entitled to compensation for the land embraced in the alley which was taken for the street.

**2. SAME—OBJECTION TO AWARD—ESTOPPEL.**
Where an owner through whose land a street is opened consents to the confirmation of the report of the commissioners appointed to condemn the land, and accepts the award for so much of his land as was taken, he is estopped to object to the compensation awarded to an adjoining owner.

Action by William Reinhardt and another against the city of Buffalo to set aside an assessment made on the property benefited, to pay for opening a street. A land-owner had opened an alley through his land in the line of the street, and had sold lots abutting thereon, and buildings were erected on such lots; but the alley was never accepted by the city, and the land embraced in the alley was taxed as the private property of the land-owner. The street subsequently opened included the land covered by the alley.

*Butler S. Farrington,* for plaintiffs. *Frank C. Laughlin,* for defendant.

HATCH, J. It is claimed by the plaintiffs that this assessment must be vacated and set aside for the reason that the commissioners in the proceedings *in invitum* awarded damages to the owner of Urban alley. The ground of this claim rests upon the assumption that Urban had dedicated this as a public street, and was, therefore, at most, entitled to only nominal damages. It does not appear that Urban had ever dedicated this as a street beyond opening and selling the lots. The city had not accepted nor was it any part of a general plan of streets prepared by the city. Urban was taxed for it as private property, and, although he was doubtless bound to keep it open for the benefit of those who had purchased fronting thereon, yet he owned the fee, and for very many purposes would be entitled to compensation if appropriated for other purposes than an easement, while the proceeding divested him of the fee and transferred it to the city. The commission had jurisdiction to make him some award, and, if excessive, it should have been corrected in the proceeding. If we assume plaintiffs' position correct, it is not available to them here. So far as Lindeman is concerned, he is estopped from raising the question, as he appeared before the commission, consented to the confirmation of the report, and has accepted the benefits accruing to him thereunder. The confirmation of the report is a judgment, and we must regard it as sacred, until vacated or modified by a direct proceeding for that purpose; it is not permitted to attack it collaterally in a proceeding like this. *Mayer* v. *Mayor, etc., of New York,* 101 N. Y. 288;[1] *In re Ferris,* 10 N. Y. St. Rep. 483. There is nothing which appears upon the face of these proceedings from which their invalidity may be determined, and proof *aliunde* may not here be resorted to for that purpose. *Dolan* v. *Mayor, etc.,* 62 N. Y. 472. The omission of Alwin and North streets by the assessors in levying the assessment in no wise vitiates the assessment, for two reasons: *First.* It appears by the proof and the admissions made upon the trial that these streets had been dedicated to the use of the public by the owners, and have been accepted by the municipal authorities, who have evidenced such acceptance by constructing sewers therein. *Second.* The maps introduced in evidence and marked by the assessors show the streets laid out at the time the assessment was made, and in the performance of their duties they estimated that such land was not benefited. This was a judicial act, and, under the circumstances, the court cannot interfere; to do so would simply substitute its judgment for that of the assessors. *De Witt* v. *Village of Ithaca,* 15 Hun, 568; *In re Ingraham,* 4 Hun, 499. This does not present the same question as arose in *Hassen* v.

[1] 4 N. E. Rep. 336.

*Rochester*, 65 N. Y. 516, and kindred cases. There the assessors were directed to assess upon all the lands benefited, but the assessors omitted lands concededly benefited, for the reason that they deemed them not subject to taxation. Here the lands are omitted for the reason that they are public streets, and also for the reason that the same, in the judgment of the assessors, were not deemed benefited by the improvement, and they were authorized so to determine. It is not necessary that the city should own the fee of a street to constitute it a public street. It is also claimed that the assessors violated their duty in levying a different and lower rate upon the west side than upon the east side. The evidence upon this subject clearly discloses the fact that they took into consideration the situation, and determined that the west side already had a street, and that they were not, therefore, benefited to the extent that the east side was. No erroneous principle was applied; it was an exercise of judgment,—a judicial act; and, even though we may think they erred in judgment, yet such fact would furnish no ground for vacating their conclusion in this action. *Kennedy* v. *City of Troy*, 77 N. Y. 493; *O'Reilley* v. *City of Kingston*, 114 N. Y. 448, 21 N. E. Rep. 1004; *Genet* v. *City of Brooklyn*, 99 N. Y. 307, 308, 1 N. E. Rep. 777; *Spencer* v. *Merchant*, 100 N. Y. 585, 3 N. E. Rep. 682.

It is claimed that error is established for the reason that the assessors changed the feet front assessed against Reinhardt from 28 feet, so as to embrace 58 feet, after the notices were sent out. If this be so, then the assessment should be vacated. *People* v. *Forrest*, 96 N. Y. 544. The roll is presumed valid until the contrary be made to appear. *In re Voorhis*, 90 N. Y. 668; *In re Hebrew B. O. A. Soc.*, 70 N. Y. 476. So that, standing alone, without proof, the roll as it appears is to be upheld. Has this presumption been overcome? It is testified to by Reinhardt that he went to the office of the assessors with the notice sent out by the assessors of the tax; that he was shown the roll by some person whom he did not know; that it then only embraced the 28 feet; and that the person exhibiting the roll, on being informed that there were 58 feet, changed the figures therein. Lindeman corroborated this testimony, but on cross-examination stated that he could not read English, and so far corrected his testimony as to say that he heard it read. The roll also shows that a change was at some time made. It is upon this testimony that plaintiffs rely. In opposition to this, defendant produces Assessor Ludwig, who states his recollection to be that he made the correction; that it was made prior to sending out the notices; that in the course of business it would be so; and while he had no distinct recollection upon the subject as to be able to state positively, yet such fact was in accordance with the business of the office and his recollection.

The allegation of the complaint also negatives plaintiffs' claim, as it describes the land owned by Reinhardt, and then says that plaintiffs, naming them, were assessed upon such property. Numerous other irregularities are alleged, but not this. The objection was not urged, so far as the evidence discloses, before the assessors, or before the common council, and only found place upon the trial at its close, when the plaintiffs were recalled for that purpose. I am of opinion that, under these circumstances, the presumption of regularity in this respect is not overcome. If Lindeman was in a position to avail himself of objection to the assessment upon the one and the one-half feet, such position could not be upheld. In *Terry* v. *Hartford*, 39 Conn. 286, an assessment under like circumstances was sustained. This case was cited with approval by BECKWITH, C. J., in *Brennan* v. *City of Buffalo*, not reported, and affirmed at general term.[1] It follows from these views that no substantial error, available to plaintiff in this action, is found. The complaint is therefore dismissed.

[1] See note on following pages.

## NOTE.

The opinion by BECKWITH, C. J., in Brennan v. City of Buffalo, filed April, 1887, is as follows:

"'The validity of the assessment is to be presumed, and the burden of establishing its invalidity is cast upon the party questioning it.' Rumsey v. Buffalo, 97 N. Y. 117. The imposition and apportionment of an assessment is the result of an exercise of the legislative power, and, although it is not necessary to say that there could not be abuse of the power, amounting to practical confiscation, upon which the courts could give relief, yet ordinarily the discretion of the legislature as to the distribution and apportionment of the tax is conclusive. The legislative power of imposing local assessments for supposed benefits has been delegated to the city of Buffalo, and the incidental power of apportioning the amount of the assessment among the persons or lots benefited in proportion to the benefit is given to the board of assessors. If this incidental power were given in absolute terms, without limitations, there could be no more relief found against the acts of the assessors and common council than if the assessment had been directed and apportioned by the legislature. Genet v. City of Brooklyn, 99 N. Y. 307, 1 N. E. Rep. 777. But where the statute granting the power to a local board prescribes the mode of the exercise of the power, a strict, at least a substantial, following of the mode is essential to the validity of the proceeding by which the assessment is ordered and apportioned. Under the charter of the city of Buffalo, there is no restriction as to the district of the assessment, except the assessment shall be placed upon the property benefited by the improvement, but the statute prescribes for the guidance of the assessors that they shall assess the amount upon the parcels of land benefited by the improvement in proportion to such benefit. Here we find a mode of assessment prescribed, and if, upon an inspection of the roll or upon the proofs, it should clearly appear that the assessors had acted arbitrarily, or that they had not followed the legislative discretion, and had not taken into estimate and consideration and judgment the relative benefit to different lots produced by the improvement, then the court might intervene and set aside the assessment as one apportioned without authority; that is to say, without observance of the rule prescribed by law. This was the ground of the decision in Miller v. City of Buffalo, (MS. opinion, SMITH, J., not reported.) See, also, People v. Jefferson County Court, 55 N. Y. 604; Clapp v. City of Hartford, 35 Conn. 78; State v. Hudson City, 29 N. J. Law, 111; Seely v. City of Pittsburgh, 82 Pa. St. 360; In re Roberts, 81 N. Y. 68.

"But when the assessors have gone on, and in good faith spread the assessments, and the case simply is that a lot-owner comes into court and declares that his lot has been assessed in too large an amount, this court can give no relief, even if it thinks the assessment is too heavy, and far from what it would have made it in the premises. In the plaintiff's case, on the trial, it struck me at first that the assessment was inordinate. When the plaintiff rested her case, there was nothing in evidence upon which she could ask relief, excepting the location of the streets, and the location and dimension of the lots and amount assessed. The plaintiff's lot fronted on Hampshire street, which crossed Fargo avenue, and was separated from Fargo avenue by a marginal strip of land six and a half feet wide, the residue of a lot of land belonging to Dr. John Ketchum, left after the opening of Fargo avenue. The plaintiff's lot on Hampshire street lies in the north-west portion of the city, about two miles from what is called the business part of the city, and Fargo avenue is a street leading from the north-western part of the city towards the business center of town; and the improvement, therefore, extended at once the accommodation of a paved street to an occupant of her lot. With the assessment roll before it, could a court say anything more than that it would not have put so large an amount of the tax on that lot? If that be all, it could give no relief. The lot fronts on Hampshire street, and the assessment roll shows that the lots fronting on the cross-streets were not assessed, except trivial sums for the openings or crossings. The next lot on Hampshire street, east and adjoining the plaintiff, having a frontage of 30 feet, was assessed but $10.75, and the next one to that, the same size, $9.68. The roll shows that corner lots, though fronting on Hampshire, Massachusetts, or other cross-streets, lying only laterally on Fargo avenue, were assessed largely, though not quite in proportion to the number of feet on Fargo avenue, but for much more than their proper frontage on the cross-streets, and relatively to one another they were assessed equally. So far it would seem that the assessors must have assessed the plaintiff on the assumption that her lot has some frontage, or the advantage of some frontage, on Fargo avenue. Substantially, as is apparent from the roll, it is assessed in the category of corner lots having their frontage on cross-streets, but bounding laterally on Fargo avenue. In fact, this lot has not such lateral boundary, because it is cut off by the marginal strip.

"In Terry v. Hartford, 39 Conn. 286, 291, a street was opened in a way that left a narrow strip on one side next to the street belonging to one owner, and adjoining that strip exteriorly a large tract of land belonging to another person. Access from the larger tract to the street could be got only by crossing the narrow strip, and the strip was not easily available for use unless used with the larger tract. The circumstances were believed by the court to be sufficient to force a use of the lands in some way together. Both pieces of land were assessed, and each owner contested the assessment, but the court held the assessment to be valid. Looking only at the assessment rolls and the plaintiff's proofs, it would be difficult to trace out anything further than

that the assessors estimated the plaintiff's benefits, simply considered, at the amount assessed.. On the face of the roll it would not be found that the lot was assessed as a corner 'lot, a part of the assessment being put on the strip. The inference from the assessment roll would be that the assessors made up their minds that the lot was benefited substantially like a corner lot, by reason either of its proximity to the paved street or the probability of a merger of the strip. But one of the assessors was called as a witness. His testimony that the judgment of the assessors was that the plaintiff's lot was benefited in the amount assessed, goes for nothing; for presumptively they had officially so declared, and, if the fact were to be proved by testimony, all the assessors should have been called. But I think it was competent for one assessor to tell by his testimony what scheme or process was in fact pursued by the assessors in fixing the assessment, if any rule or theory was in fact adopted by them different from that prescribed in the charter, which is the simple rule to assess 'in proportion to benefits.' Under the charter-rule, the assessors should have taken into consideration nothing more than the benefit to this lot in proportion to the others benefited. That should have been a direct inquiry. But it appears from the testimony of the assessor, in connection with the facts apparent from the roll, that all the lots fronting on Fargo avenue, and all the other corner lots lying laterally on Fargo avenue, were assessed equally,—that is, by the same scale; and if the plaintiff's lot and the six and one-half feet lateral strip had been one lot, then no fault could have been found. But the strip and plaintiff's lot were two, and the plaintiff's lot did not have, like all the other corner lots, a lateral boundary on the avenue to be paved. When the assessors came to these, the strip and the plaintiff's lot, they did not proceed to make the simple unalloyed estimation of the relative benefit to the plaintiff's lot, but they entered upon the invention of a theory upon which these two parcels could be assessed as a unit and as one corner lot like the others. If they had followed the rule of the charter, *non constat* they might have assessed the plaintiff's lot a smaller sum, which might have changed the rate of figures as to all the other lots in the roll. But it sufficiently appears that they arbitrarily combined the plaintiff's lot and the strip into one, and assessed them as a corner lot, at the same rate as the other corner lots, thus theoretically making the plaintiff's lot a corner lot, with a frontage on the avenue, which it was not; and, as a result of their theory, and not of their judgment as to relative benefits, they arbitrarily assessed upon the plaintiff's lot all of the planned assessment for that corner that could not be put upon the strip without confiscation. Substantially the plaintiff's lot was assessed as a lot lying on Fargo avenue, at about the same rate, dimensions of the lot considered. as the other corner lots, which were actually bounded on the avenue, not separated therefrom by a strip belonging to another owner. It seems quite evident that the assessors predetermined their plan of assessment, which was to make a uniform rate for corner lots, and a uniform rate for intermediate lots fronting on the street. When they came to the locality of the plaintiff's lot, in order to keep from reforming their scheme, they arbitrarily changed the facts as to the relation of lots, and made the strip and the plaintiff's lot one parcel, which they were not. This theoretic swinging round the plaintiff's lot, so as to give it a frontage on the avenue, was calculated to interfere with the simple process of the charter. It was artificial and arbitrary, as was the putting all on the strip they could without confiscation. In effect, the assessors adjudged the plaintiff's lot was a corner lot, which it plainly was not. They should have taken into consideration the peculiar character of the strip and the plaintiff's lot, regard being had to the relative circumstances of all the other lots, and kept their process to judgment free from the artificial formula adopted. The rule they followed was well adapted to the other corner lots which were similarly circumstanced, but was wrong when arbitrarily applied to lots differently circumstanced. Here, I think, we find illegality in their proceeding which requires the assessment as to the plaintiff's lot to be declared invalid.

"It may be that the assessors, if called upon to make a new assessment, would again lay the same amount upon the plaintiff's lot, but that possibility the court is not bound to consider. The court could not set aside the assessment because it differed from the assessors as to the proper amount, and cannot, if the process was illegal, affirm the assessment as not being too large. It may be claimed that the assessment of the plaintiff's lot was not arbitrary; that the design of assessing the strip and the plaintiff's lot together as one lot was the result of reflection and the judgment of the assessors as to the proper rule to be followed in all cases where lots are similarly placed; and that the assessment on the plaintiff's lot is, after all, the judgment of the assessors as to the amount of benefit to the lot, which this court cannot review. Every assessment is an independent proceeding, having its own circumstances, and the charter requires the mental judgment of the assessors to be applied, with respect to each lot, to the question of its proportion of the benefit caused by the improvement. This case is different from those instances where a small lot, having a frontage on the street, is connected with a larger lot lying back, but belonging to the same owner. There it is not to be traced that the assessors have made any error, except it be the want of judgment as to the fair amount of the assessment, the land all belonging to one owner, and all portions of the premises being susceptible of use with the parcel fronting on the pavement, and so, in some degree, getting the benefit of the improvement. But a mere mistaken opinion and judgment of the assessors as to the proportion to put on the lot cannot be reviewed by the court. Judgment for the plaintiff, with costs."