### In re TUTHILL et al.

#### (Orange County Court. February 10, 1898.)

**1. DRAINS—ESTABLISHMENT—CONSTITUTIONAL LAW.**
    Under Const. art. 1, § 7, as amended in 1894, which provides that "general laws may be passed permitting the owners or occupants of agricultural lands to construct and maintain for drainage thereof necessary drains, dykes and ditches upon the lands of others under proper restrictions and with just compensation," the legislature may pass general drainage laws, permitting the drainage of more or less extended areas of agricultural lands, on the application of one or more persons, and without the consent of others, but at the expense of all.

**2. SAME.**
    Under Const. art. 1, § 7, as amended in 1894, which authorizes the exercise of the right of eminent domain in drainage proceedings for the benefit of private owners of agricultural lands and for private purposes, any number may institute a single proceeding against all parties affected within an enlarged area for the construction of a drain for the benefit of all.

**3. SAME—ASSESSMENT OF BENEFITS.**
    Where the legislature, under the constitution, has the right to authorize the condemnation of property of a nonconsenting owner for the construction

of a drain, the right to assess him for benefits conferred by the work done under such proceeding rests wholly in its discretion.

**4. SAME—AMOUNT OF ASSESSMENT.**

The fact that an assessment for the benefits conferred by a drain exceeds the value of the land so assessed does not invalidate the law or assessment made thereunder.

**5. SAME—CONSTITUTIONALITY OF LAW—WAIVER.**

Laws 1895, c. 384, provides that any person owning agricultural lands may institute proceedings for the drainage thereof by petition to the county court, with the names of the persons affected, praying for the appointment of commissioners to determine the necessity of the drain, provided that notice of such petition be given to the persons affected. Notice was duly given, and the commissioners were appointed, and decided that the drain was necessary. Notice of such decision was given to the landowners, and the drain was constructed, no objection being made to any of the proceedings had therein. The findings of the commissioners as to the necessity of the drain and their decision as to the amount and liability for the assessments were subject to objection and appeal. *Held*, that where no objection was made by the parties affected to any of the decisions or findings of the commissioners, or appeal taken therefrom, their right to question the constitutionality of the act was waived, and could not avail them in a proceeding to compel payment of assessments.

**6. SAME—LIABILITY ON ASSESSMENTS.**

In a proceeding to enforce payment of assessments for benefits resulting from the construction of a drain, the fact that the commissioners borrowed money and paid the contractors for the work, in the absence of any prejudice to the rights of the landowners, does not lessen the liability of such owners to pay their assessments.

**7. SAME—ASSESSMENTS—AREA—REVIEW.**

In a proceeding to construct a drain, the action of the commissioners as to what area shall be included in the assessment is final, and not subject to review by the courts.

This was a proceeding brought by John B. Tuthill, Jesse Hunter, Guy Miller, Edmund King, R. W. Chamberlain, and others—25 in all—to have commissioners appointed to drain the onion meadows at Chester and Greycourt, comprising about 750 acres of land. Oscar Durland, Charles Caldwell, and William H. Pierson were appointed commissioners. They commenced work in August of 1895, and completed it in July of 1896. After the work was done, the commissioners assessed the expenses on all the landowners, about 105 in all. About half of these paid their tax, and the other half refused to pay. Judgment for petitioners. Those contesting the assessment are Nathan Helme, R. P. Conklin, John Hallihan, R. McCormick, and others.

F. V. Sanford and William Vanamee, for petitioners and commissioners.

J. V. D. Benedict, L. Rutherfurd, and Bacon & Merritt, for various landowners.

BEATTIE, J. This proceeding was instituted under the provisions of chapter 384 of the Laws of 1895, which is entitled "An act in relation to the drainage of agricultural lands." It is claimed on the part of the parties who instituted the proceeding that it was intended to provide a general system of drainage, under which private owners of agricultural lands might drain their lands and contiguous lands, and

assess the damages and benefits upon the lands embraced within the area of the drainage system.   And it is claimed that the act was passed under the authority of an amendment to article 1 of section 7 of the constitution as adopted in 1894, which reads:

. "General laws may be passed permitting the owners or occupants of agricultural lands to construct and maintain for the drainage thereof necessary drains, ditches and dykes upon the lands of others under proper restrictions and with just compensation, but no special laws shall be enacted for that purpose."

Prior to the adoption of the act of 1895 there existed an act entitled "An act to amend title sixteen, chapter eight, part three of the Revised Statutes relative to proceedings for the draining of swamps, marshes and other low or wet lands and for draining farm lands" (being chapter 888 of the Laws of 1869).   That act provided in terms that any person or persons owning or possessing any swamp, bog, meadow, or other low or wet land within this state, who shall be desirous to drain the same, and who shall deem it necessary in order thereto that a ditch or ditches or other channels for the free passage of water should be opened through lands belonging to another person or other persons, and any person or persons who shall deem it necessary for the public health that any such swamp, bog, meadow, or low or wet lands should be drained, may present a petition to the county court.   The act then provides for the appointment of commissioners, and for their determination as to the necessity of the drainage, and a general scheme of condemnation and assessment to secure the result contemplated by the act.   This legislation, as well as that of a similar character which had preceded it, was brought into question, and it was held to be unconstitutional, except under the provision contained in the act of 1869, which authorized the proceeding where deemed necessary for the public health.   And it was held in the case of In re Ryers, 72 N. Y. 1, decided in January, 1878, that the act could only be sustained upon the principle of the right to take private property for public use, making due compensation therefor.   And it was further said, "No action purporting to be taken under it which is shown to have other object than to maintain the public health can or will be sustained under our present constitution."   With authoritative construction thus put upon such legislation, proceedings were thereafter frequently instituted under the guise of a proceeding for the benefit of the public health, when in fact the only purpose to be attained was the drainage of lands for the individual owners.   But, however the desired result might be accomplished, the condition remained that a proceeding having the avowed and sole purpose of securing the drainage of low and wet lands for the benefit of private owners was clearly within the constitutional prohibition against the taking of property for private use, and this condition existed when the constitutional amendment of 1894 was adopted by the people.   The question is, therefore, sharply presented whether that amendment did meet, and was intended to meet, the existing conditions limiting the maintenance of such proceedings to public purposes, and to authorize such proceedings not alone for the purpose of putting the condemnation of a right of way or easement for drainage for the benefit of individual owners, but also to authorize general drainage

laws which would permit the drainage of more or less extended areas upon the application of one or more persons and without the consent of others, but at the expense of all who might be affected thereby. It is a very significant fact that the language employed in the amendment is practically identical with that used in the act of 1869, which had been declared by the courts to be for a public purpose, and coupled with the subsequent provisions in the acts of 1869 and 1895 as to the payment of damages and the assessment of benefits it is strong, if not conclusive, evidence that the legislature intended to use words so comprehensive as to include every landowner and every interest affected by such a proceeding, and that the constitutional convention, with knowledge of the existing legislation, and the construction put upon it by the courts, intended to provide a general authority for such legislation, which would put at rest all controversy over the constitutional right of the legislature to authorize the exercise of the right of eminent domain in all cases where the drainage of agricultural lands might be deemed necessary. And it is important to consider the preceding provision contained in section 7 of the constitution, which provides that in the opening of private roads the amount of all damages, together with the expenses of the proceeding, shall be paid by the party benefited. And it would seem that, if the damages and expenses of drainage proceedings were required to be paid by the applicants as the only persons to be benefited, a similar restriction as to who should make payment of the amount required would have been made to apply to drainage cases. It seems like a strained construction, which, in its practical operation, would require that the owner of a tract of land situate at the extreme line from the outfall of a proposed drain, and who wished to drain his lands, should not only be compelled to pay the damages for the easement through lands of similar character, and all the expenses connected with the work, and be powerless to have the benefits assessed upon lands through which the drain actually extended, or upon lands draining over such lands into the drain itself. Considering the large areas of agricultural land in this state which require drainage, the history of the legislation to secure drainage, the construction put upon such legislation by the courts, and the fact that express constitutional authority was invoked in order to secure a remedy for the existing conditions, it would seem that the framers of the constitutional amendment intended to accomplish more than to authorize a landowner to institute a proceeding which might benefit an entire neighborhood, and at the same time require that it should be done at the expense of the applicant. Constitutional authority would hardly be necessary if the right to secure drainage was simply dependent upon the financial ability of a landowner wishing to secure such a result.

I think the act can be sustained upon another ground. That the constitution now authorizes the exercise of the right of eminent domain for the benefit of private owners of agricultural lands and for private purposes, there can be no question. This being so, it would seem to be quite immaterial as to how far such right might be exercised in a single proceeding. If two or more landowners may institute the

proceeding for the benefit of their own lands, and under the provisions of the act have an assessment of damages and benefits, it is difficult to explain why any number of such landowners may not institute the proceeding, and secure the same result by the same methods within an enlarged area, and as against all the parties affected. It is true that, as against the parties who do not join in a proceeding, their property is taken without their consent, but that is the exact result sought to be attained by the constitutional provision. Having the right to condemn the easement or property of a nonconsenting owner, the question of the right to assess him for benefits conferred by the work done under the proceeding, is not a matter of constitutional limitation or control, but rests wholly in the legislative authority or discretion. People v. Nearing, 27 N. Y. 306; People v. Mayor, etc., of Brooklyn, 4 N. Y. 419; Darlington v. Mayor, etc., 31 N. Y. 190. That the legislature has conferred such authority cannot be questioned under section 10 of the act, which by its terms provides for the assessment of damages and benefits. The fact that the assessment for benefits may exceed the intrinsic value of the land assessed does not invalidate the law or an assessment under it. Genet v. City of Brooklyn, 99 N. Y. 305, 1 N. E. 777. The general provisions of the two acts of 1869 and of 1895 are practically the same, except that one is declared to be for a public purpose and the other is wholly for the benefit of individuals. Under both acts, however, the methods of condemnation and assessment of damages and benefits are practically the same. The legislation in question can be sustained by the construction here sought to be given to it.

But an examination of the record of this proceeding discloses conditions under which the proceeding may be sustained if it should be assumed that the act itself was unconstitutional. The application for the appointment of commissioners under the act was duly made upon notice to all parties affected by the proceedings. Upon the hearing some of the parties who now oppose the proceedings appeared. No objection of any kind was raised, and the commissioners were appointed. Thereafter they entered upon the discharge of their duties, and made and filed their determination as required by section 7 of the act, deciding that it was necessary that a drain be opened through lands belonging to parties other than the petitioners. Due notice of the filing of the determination was published, and served upon all the parties as required by that section. By section 8 of the act any person aggrieved was entitled to appeal to the county court; and upon the confirmation of the finding or determination made by the commissioners such finding or determination became final. No appeal was taken by any of the parties. Thereafter some portion of the work was done, and as to some of the parties interested it appears that they either assisted in the work or were consulted in regard to its execution. None of the parties made any objection as to the right to enter upon their lands for the purpose of carrying out the work, nor to the methods employed. While the work was in progress the maps and surveys showing the tracts of land affected were duly filed, as required by section 9 of the act. Thereafter notice was duly given to all the parties interested that the commissioners would meet at a certain time and

place for the purpose of hearing all persons desiring to be heard upon the assessment of damages and for the expenses of draining the land. Upon the day fixed, and upon a number of days thereafter, the parties assessed appeared in person and by counsel, and litigated the fairness and equality of the assessments for damages and benefits. At the conclusion of the hearing the commissioners readjusted their assessment to conform to their judgment upon the proofs given, and filed their decision thereon, as required by said section 9. During the hearing no question was raised as to the constitutionality of the act. Notice of the filing of the determination of the commissioners was duly given to all parties affected as required by the same section. By section 11 of the act it was provided that any person aggrieved by the assessment might appeal to the court to review it, that upon the appeal an order should be made, and that from such order there should be no appeal. No appeal was taken by any of the parties from the assessment. Within 60 days after the filing of the assessment, as fixed by section 12 of the act, payments of the assessments were made by a number of the persons interested. Upon the failure of some of the parties to pay such assessment, application was made to the court under section 13 of the act for an order directing the entry of judgment for the amount due. In the meantime the work of drainage had been completed. Upon the hearing upon the application for judgment the counsel for the petitioners objected to any proof being given as affecting the validity and amounts of the assessment, upon the ground that, all the proceedings having been taken under the sanction of the court, and without any appeal having been taken by any of the parties in the course of the proceeding, all the parties were estopped from litigating any question which might have been raised by an appeal. The objection was overruled, and all the testimony offered was taken. The substance of it was that, in the opinion of the witnesses called by the objecting parties, little, if any, benefit had been accomplished by the work done. In no instance was any specific error pointed out as to any of the assessments. That the work had been done under the direction of the commissioners and their engineer, that over $10,000 had been expended, and that all the lands assessed were agricultural lands, there was no dispute. I think that, upon all the facts as disclosed by the record, the parties who now object to the validity of the act have waived their right to raise the question of its being unconstitutional. It is the evident purpose of the act to so guard the rights of all parties, including the commissioners themselves, that the various steps to be taken in the proceeding should be so taken that each determination of the commissioners which formed the basis of their subsequent findings and acts should be final and conclusive upon all parties. Thus the finding as to the necessity of the drainage was subject to the right of appeal and of review, and a confirmation was to be final as to all questions embraced in the finding. The failure to appeal was, in itself, a confirmation of the finding. When the decision as to the amount and the liability for the assessments was subsequently filed, the right of appeal and review was again given, and the order then made was to be final. But no appeal was taken. There still re-

mained the right to have the assessments reviewed, but that review was to be confined to such modifications as the parties might show themselves entitled to, and no authority was given to the court to set aside the proceeding. It was then obviously too late for the exercise of such power. All the assessments had then been made. The work had been completed, and a number of the assessments paid. The only purpose of the final proceeding was to compel payment of the assessments still remaining unpaid. To permit the parties who might then claim to be dissatisfied with their assessments to raise the questions which might have been raised and disposed of in the course of the proceeding would be most unjust to the commissioners and the other parties who had paid their assessments. It would also enable the parties who had had the benefit of the work to await its completion, and then possibly escape all liability for the benefits they had received. It has been frequently decided that a party may waive a rule of law, a statute, or even a constitutional provision enacted for his benefit or protection, where the right to make such waiver is exclusively a private one; and, having once waived such right, he cannot subsequently invoke its protection. Mayor; etc., of City of New York v. Manhattan Ry. Co., 143 N. Y. 1, 37 N. E. 494, and cases cited.

As to the other questions raised, it may be said that the fact that during the course of the work, or at its completion, the commissioners paid the contractor for the work done, and borrowed moneys for that purpose, is not a matter with which the objecting parties have any concern, in the absence of proof of prejudice to their rights caused by such payments. The only question involved as to them is whether their assessments should be in any respect modified, and whether they are still unpaid. The commissioners' right to enforce payment is dependent upon the validity of the assessment. The fact that they have paid the contractor for his work does not lessen or impair the liability of the parties whose assessments are still unpaid.

The remaining objection—that the area assessed is too small, and that additional lands should have been assessed, and some portion of that assessed should have been omitted—is not a matter over which, upon the proof, the court can exercise any control. The question is within the principle of the decision in Re Cruger, 84 N. Y. 619, where it was held that the claim that the assessment was made upon an erroneous principle, and that the area of the assessment was too small, was not subject to review by the courts; that the opinion of witnesses before the court could not be substituted for that of the officers to whom the matter was committed by the statute.

The petitioners are entitled to judgment as against all the parties who are in default upon the assessment.