## Betts *vs*. The City of Williamsburgh.

The benefit accruing to a person whose land is taken for a street, by the increased value of adjacent property, belonging to him, may be set off against the loss or damage sustained by him by the taking of his property for a street; and if equal to the loss or damage, is a just compensation for the property so taken.

The constitutional provision does not require that the amount of the benefit shall be absolutely certain; nor that the exact value of the land taken should be paid; nor that the payment shall be in money. All that is accorded to the owner is a just compensation; and that is obtained by him if he has a full equivalent for what he surrenders to the public.

Where a statute makes provisions which, if fairly applied, will fully indemnify individuals for their property which may be taken for public purposes, it is valid; but it is otherwise where the provisions are illusory, or necessarily inadequate.

Under the 11th and 12th sections of the act in relation to the town and village of Williamsburgh, passed March 15, 1848, where land belonging to individuals is taken for a street or avenue, commissioners of appraisal may be appointed by the county court of Kings county.

Under the 8th section of that act, which requires notice of the presentation of a petition for the opening of a street, &c. to be published in one or more newspapers published in the village of Williamsburgh, for the space of three consecutive weeks, a publication in two of the newspapers of the village once in each week for three consecutive weeks, is sufficient; especially where there is no allegation or probability that the owner of property objecting to such publication was in any manner injured through his ignorance of the proceedings.

The question whether persons remonstrating against the opening of an avenue in Williamsburgh constitute a majority of the owners of property to be affected thereby, is one of fact, for the consideration and determination of the trustees of the village; and their decision will not be disturbed merely because one of the opponents of the improvement swears he " has reason to believe" that a majority did remonstrate.

An injunction ought not to be granted, to prevent a municipal corporation from enforcing an assessment for a public improvement. The appropriate remedy of a person whose property is taken for the use of the public is, to remove the proceedings into the supreme court by certiorari.

Motion by the plaintiff for an injunction to restrain the defendants from selling his land under and by virtue of an assessment for the opening of Montrose avenue, in the city of Williamsburgh.

---

Betts *v.* The City of Williamsburgh.

*Mr. Willard,* for the plaintiff.

*Mr. Thompson,* for the defendants.

S. B. STRONG, J. The plaintiff avers in his complaint that the proceedings of the trustees of the late village (now city) of Williamsburgh in opening Montrose avenue, and the assessment subsequently made for that projected improvement, were invalid, and asks that the same may be vacated; that the defendants may be perpetually enjoined from selling his lands under such assessment; and that he shall be reinstated in the possession of the portions of his land taken for the contemplated street. He now applies for an injunction prohibiting the sale of his lands which have been assessed, until his case can be tried and decided upon the merits. The relief claimed in the complaint is partly of a legal and partly of an equitable nature, and it may be a question whether the whole can be comprehended in one suit, under the last addition to the code of procedure. It is not necessary, however, that I should consider that question here; as my decision of the motion argued before me will proceed on other grounds.

The objections to the proceedings of the trustees, commissioners of appraisal and assessors, set forth in the complaint, are numerous, but I shall express an opinion upon those only which were urged by the plaintiff's counsel on the argument.

It was contended in behalf of the plaintiff that the act of the 15th May, 1848, (*Sess. L. of* 1848, *p.* 97,) under which the proceedings in this case were conducted, was unconstitutional, because, 1st. It made no provision for a just and adequate compensation to the proprietors of land to be taken for public purposes; and 2d. It required in effect double taxation. The compensation was said to be inadequate, and therefore illegal, because it was to consist, in cases like the plaintiff's, partly in the advanced value of the adjoining lands. Just compensation requires a full indemnity, and nothing more. Where the value of the benefit is certain, there can be no doubt as to the propriety of including it as a part of the compensation. The difficulty

in many (perhaps in a large majority of) cases, is that such value is indefinite, depending upon conjecture; and if those making the estimate should exaggerate it, injustice might be done. This consideration undoubtedly calls for cautious guards, but is not of sufficient weight to overthrow the principle, founded as I conceive it to be, in justice. It is much more appropriate that a benefit to an individual should be recompensed by himself than by those who are wholly disinterested, although it may be difficult to ascertain the precise amount. In such cases the owners may gain or they may lose by the uncertainty : they must take their chance. The statute contains appropriate, and I should think sufficient provisions, for the protection of the interests of the landowners. The trustees may refuse to accept the report, and they should, and probably would do so, if it should be unjust ; and if they should err, there may be an appeal to the court by whom the commissioners were appointed. Where a statute makes provisions which, if fairly applied, will fully indemnify individuals for their property which may be taken for public purposes, it is valid ; but it is otherwise where the provisions are illusory, or necessarily inadequate. The point which I am considering was settled, in accordance with what I have said, in the case of *The Mayor, &c. of New- York* v. *Livingston,* decided by the court for the correction of errors, and reported in 8 *Wendell,* 85. It was decided there "that the benefit accruing to a person whose land is taken for a street, by the increased value of adjacent property belonging to him, may be set off against the loss or damage sustained by him by the taking of his property for a street, and, if equal to the loss or damage, is a just compensation for the property so taken." (*Head notes, p.* 85.) The late chancellor said, (page 101,) "The owner of the property taken is entitled to a full compensation for the damage he sustains thereby ; but if the taking of his property for the public improvement is a benefit rather than an injury to him, he certainly has no equitable claim to damages." I am aware that the authority of this case has been questioned by learned judges, for whom I entertain a high respect, in a late case. (*The People* v. *The Mayor, &c. of Brooklyn,* 9 *Barb.* 535.)

The principal reasons for doubting the case of *The Mayor, &c. of New-York* v. *Livingston,* assigned in the leading opinion in the case in Barbour, are, the uncertainty as to the value of the benefit, and the necessity of paying for the actual value of the land taken, in money. But the constitutional provision does not require that the amount should be absolutely certain, (for the value of the land, if that should be the criterion, must be estimated;) nor that the exact value of the land should be paid; nor that the payment should be in money. All that is awarded to the owner is a just compensation, and that is obtained by him if he has a full equivalent for what he surrenders to the public. The case of *The People* v. *The Mayor, &c. of Brooklyn,* was reversed in the court of appeals, and the opinion of Chancellor Walworth which I have quoted was cited without dissent, if not with approbation, by the present learned chief judge of that high tribunal.

The objection that under the act of 1848, the owners of lands taken for streets might be doubly taxed—first by the deduction from their actual equivalent of the improved value of their adjoining lands, and secondly by the imposition of an assessment precisely equal to such value—would if founded in fact be fatal to its validity, at least in that particular. But clearly such was not the intent, and I think that such is not the appropriate construction, of that act. By the 25th section the assessors are required to apportion and assess the amount of the expenses, and the compensation to the owners of the land taken, upon all the persons and land to be *benefited* by the doing the thing which the trustees have determined to be done, in proportion to the separate benefit or advantage which the same will be to the said persons or lands, upon *equitable principles.*" The assessment is not required to be made exclusively according to the actual *improved value* of the land, but equitably according to the *benefit* conferred. Now the actual benefit to an adjoining owner is the increase in the value of his property beyond what the improvement has exacted from him; certainly no more. And equity requires that he should pay the excess, not that he should pay to the entire extent of the improved value when

Betts *v.* The City of Wiliamsburgh.

he had already been charged for a part of it. If the value of the improvement should not exceed the amount offset against the value of his land taken, he is not benefited at all, and he could not be assessed for any additional sum according to the terms of the act. The act is certainly susceptible of this exposition, and when the language used will admit of an interpretation essential to its validity it should be adopted, in preference to a construction tending to nullify it.

In the case under consideration it does not appear with sufficient clearness to call for, or justify, judicial action, that there has been in fact any double taxation. The plaintiff alleges in his complaint, upon information and belief, that the commissioners, after ascertaining the value of his land required for the street, deducted therefrom a large amount by reason of the benefit which would accrue to his adjoining lands; but it is stated in the affidavit of the city counsel, "that the commissioners found, upon investigation and testimony produced, that the several owners of land in said street had dedicated the same to the use of the public; that they are entitled only to nominal compensation therefor; and that the commissioners made no deduction therefrom for benefits to the adjacent lands of the same owners."

It was also contended by the plaintiff's counsel that the appointment of the commissioners of appraisal was invalid, as it was made by the county court of the county of Kings, without the requisite statutory authority. The act of March 15th, 1848, (§§ 11, 12,) directs that the application for the appointment of such commissioners shall be made to *some* court of record of the judicial district in which Williamsburgh is, or may be, situated. It has been contended that this has reference to the supreme court only, but I do not so understand it. The terms seem to point to more than one tribunal. It is usual, where but one court is designed, to particularize it. A general description indicates a plurality, and such should be its interpretation where the accompanying terms will justify it. The word "of," without any straining, may mean *in* as well as *over* the whole district; otherwise the supreme court would not be in-

cluded in the designation, as that is not a court of the district
but of the state.    If the language extends beyond the supreme
court, and I think it does, it must necessarily include the county
court.    If this construction carries the power further than was
originally intended, by including other county courts in the dis-
trict, it does not furnish a strong argument against it, as the
language of our statutes, and particularly of those relative to
our municipal corporations, is not always marked by precision.
If the power was conferred upon the county court by the act of
1848, it was, I think, continued by the 471st section of the code,
passed in 1849, as it was also by the 11th subdivision of the
30th section of the code of 1851.

The complaint sets forth that " a notice of the presentation of
the petition, asking for the projected improvement, was pub-
lished once in each week for three consecutive weeks in two of
the newspapers of the village, but in no other manner ; whereas
[the plaintiff avers] the same should have been published for
the space of three consecutive weeks."    The act requires (§ 5)
that the notice shall be published in one or more newspapers
published in Williamsburgh for the space of three consecutive
weeks next preceding the time specified in such notice for the
trustees to meet.    It was contended on the argument that this
provision required that the notice should be published daily
during the three weeks, whereas it had been published but once
in each week.    The assertion of the non-publication, except as
set forth in the complaint, is simply of a negative, and is not by
a statement made in the affidavit of the defendant's counsel
" upon his information and belief," that the notice was in fact
published daily for three weeks in the Williamsburgh' Daily
Times, " but that the affidavit in proof thereof was made out for
a weekly advertisement," as it was supposed that was all that
was necessary.    The averment in the complaint, if essential,
should have been met by a more positive counter assertion, when
the truth could have been so readily ascertained by a reference
to the files of the newspaper.    But a daily publication was not
specified in the act, nor is it probable that it was intended, as
the notice was to be inserted in a newspaper printed in a village

where there is but one daily paper at present, and where there was probably none such at the time when the act was passed. As it is by no means clear that there was any omission, and as there is no allegation or probability that the plaintiff was in any manner injured through his ignorance of the proceedings, this objection cannot prevail.

The plaintiff also alleges that a remonstrance was presented against the project, signed by fifty-five owners of property affected by the proposed improvement, comprising, *as he had reason to believe*, a majority of the persons liable to be affected by, and [to] pay the expense of making the improvement asked [for] in said petition, and a majority of the owners at the time of the presentation of the petition within the district of assessment, affected by the said proposed improvement;" whereupon, as he contends, the trustees should have desisted from any further prosecution of the matter. Where the remonstrance is signed by a majority of such owners, the act undoubtedly prohibits the trustees from doing, or ordering "the thing asked in the petition." (§ 6.) But the question whether the remonstrants constituted a majority of the owners, was one of fact, for the consideration and determination of the trustees; and their decision ought not to be disturbed merely because one of the opponents of a project adopted by them, "has reason to believe" that they were wrong.

The remaining objection to the conduct of the trustees, set forth in the complaint, and urged upon the argument, is, that in their estimate, they allowed an unreasonable sum [1000 dollars] for contingent expenses; and that it was not ascertained or fixed by reference to any reasonable or lawful principle or method of ascertainment. The trustees are authorized by the act (§ 7) to include in their estimate a reasonable amount for contingent expenses, which will be incurred in doing and completing the thing asked in the petition, and directed by them to be done. The amount included in the estimate in this case is not so large as of itself to lead to the conclusion that it is unreasonable; nor am I authorized to act upon the supposition that it is so, in opposition to the determination of those to whom

the trust has been confided, upon general assertions, unaccompanied by the statement of any facts to support it.

Several objections to the assessment are set forth in the complaint, but they do not appear to me to be very important; and the act declares (§ 26) that when the assessment shall have been ratified and confirmed, it shall be conclusive in all proceedings thereafter had against all persons named in the assessment roll, and against all land described therein; and that it shall not be impeached or controverted in any direct or collateral proceeding, in any court where it shall come in question at any time thereafter.

The plaintiff's position that the proceedings in his case, subsequent to the assessment, should have been conducted pursuant to the provisions of the act to incorporate the city of Williamsburgh, passed on the 7th of April, 1851, is overthrown by the provision in the 14th section of the 10th title of the act, that the repeal of the act of March 15th, 1848, shall not affect any proceedings commenced before the act of 1851 should take effect as a law; but that the same may be continued and *completed*, with the same effect as though such last mentioned act had not been passed.

Upon the whole, I am satisfied that the plaintiff's objections to the proceedings in this case, are untenable. But if it had been otherwise, and such proceedings had been void from some fatal defect, or voidable for irregularity, the plaintiff could not have obtained the injunction for which he asks. The law—and by that I mean the statute and common law, and the settled practice of our courts—designates the various methods for obtaining redress for existing evils, and security against those which are apprehended; and policy, and I may add, justice, requires that they should be pursued, and that variant and unsuitable procedures, however great may be the wrong to be redressed or averted, should be unavailable. The law gives to any one who may have been injured by the proceedings of a municipal corporation in taking his property for the use of the public, the right to remove such proceedings into the supreme court by certiorari. When thus removed they may be directly

Betts v. The City of Williamsburgh.

reversed if invalid, and the rights of all concerned thus protected in a single suit. Whereas if each party affected is allowed to attack the proceedings collaterally, the decision of his case is not conclusive. as a judgment, and frequently not as a precedent upon the rights of others. Should he obtain an injunction, it can have reference only to his own property; and thus a public work, perhaps of great moment, must either be wholly arrested at the solicitation of a single individual, (often very slightly interested, and litigiously disposed,) or imperfectly performed. If any person whose interests may be affected by such proceedings is anxious to prevent a multiplicity of suits he can do so by promptly obtaining a certiorari; and if he objects to the cloud which an improper assessment casts upon the title to his lands, he can readily dissipate it by the same procedure. Should he omit. to do so until it is too late to obtain the remedy, he cannot reasonably call upon the court to grant him an extraordinary protection from evils resulting, in part at least, from his own negligence, and for causes which might have been prevented by due vigilance. Had the plaintiff in this case pursued the course which I have indicated, in due season, and succeeded, as he doubtless would have done if his objections are well founded, there would not have been any cloud upon his title now, nor would he have been subjected to the necessity of instituting or defending some fifty lawsuits for the protection of his title to his lands. Indeed the latter danger may be averted still, should he elect to pay the money, and as such payment would, under the circumstances, be deemed compulsory, he might recover it back if the municipal authorities have no legal right to exact or retain it.

I recently decided in the case of *Bouton* v. *The City of Brooklyn*, and as I then supposed, and still think, in accordance with numerous decisions of the supreme court which had received the sanction of the court of dernier resort in this state, that an injunction should not be granted to restrain a municipal corporation from enforcing an assessment. I retain the opinion which I then expressed. The case under consideration forms no exception, especially as the excessive litigation

which the plaintiff seems to dread, might have been prevented by prompt and proper efforts on his part; and indeed may yet be averted by his own exertions.

The motion for an injunction is denied, and the order for a temporary injunction is vacated. The defendant's costs, amounting to ten dollars, to abide the event of the suit.

