appointment of the commissioners. It is no answer that the strip taken is narrow and the damage inflicted small. The question of the amount of damage and the compensation therefor is to be determined in the first instance by the commissioners to be appointed and not by the court. All that is necessary to establish to the satisfaction of the court is that a street or a part thereof has been discontinued or closed in the manner provided by law by the local authorities; that the property abuts upon such street so discontinued or closed; that the owner has, within the time limited, presented to the comptroller a written statement or claim for compensation, and a request that a proceeding be instituted by the appointment of commissioners for the ascertainment and determination thereof; and that such proceedings have not been instituted. The petition in the matter at bar sets forth all those facts.

It follows, therefore, that the order appealed from should be reversed, with $10 costs and disbursements, and that the motion should be granted, with $10 costs. All concur.

---

(120 App. Div. 849.)

In re WATER FRONT ON NORTH RIVER IN CITY OF NEW YORK.

CONSOLIDATED GAS CO. OF NEW YORK v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 15, 1907.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—DEPRIVATION OF PROPERTY—
    EMINENT DOMAIN.
        Greater New York Charter, Laws 1901, p. 351, c. 466, § 822, authorizing
    the acquisition for the benefit of the city of wharf property and lands
    under water as shall be necessary for the improvement of a water front, and
    providing that in awarding compensation for the taking of land the value
    of the entire premises shall be ascertained and then the value of the prem-
    ises in the condition they will be after the part is taken and the difference
    shall be the measure of compensation, construed to authorize commis-
    sioners of estimate and assessment, in estimating compensation for prop-
    erty sought to be taken, to consider the special benefits resulting to the
    portion of land not taken, is not violative of the fourteenth amendment to
    the federal Constitution, though an owner of a parcel which is entirely
    taken will receive full compensation.

2. EMINENT DOMAIN—CONDEMNATION OF LAND—DAMAGES.
        Greater New York Charter, Laws 1901, p. 351, c. 466, § 822, authorizes
    the acquisition by the city of land under water for improving the water
    front of a river, and provides that if the property of the riparian owner
    has been built on or improved, and part only of the property is taken, the
    just value of the entire premises shall first be ascertained, and then there
    shall be ascertained the value of the premises in the condition in which
    they will be after the part is taken, and the difference shall constitute
    the measure of compensation. The city sought to acquire lands originally
    under water for improving the water front of a river. It sought to ac-
    quire a part of a tract on which there were improvements. It also sought
    to acquire a part of a parcel originally under water, which would be brought
    to grade on an established street on the completion of the proposed im-
    provement. *Held,* that the statute was applicable to both parcels, and
    special benefits resulting to the parcels not taken were properly deducted
    in estimating the compensation to be awarded for the land taken.

3. SAME.
        In a proceeding by a city to condemn land for a public improvement it
    appeared that by taking the land a gas company having a gasholder there-

on would be obliged to construct a main from another of its sources of supply to provide gas for the district formerly served by the gasholder. It received compensation for the gasholder as a part of a going concern. *Held*, that the compensation awarded was sufficient as against the objection that the company should have been allowed the expense incurred in constructing the main from another source of supply.

**4. SAME.**

Where, in proceedings by a city to condemn land owned by a gas company, it appeared that it had mains in the land, but the mains were not taken, the value of the mains was no part of the compensation to which the company was entitled.

**5. SAME.**

In a proceeding by a city to condemn land of a gas company it appeared that the company had maintained for many years a gasholder on the land and connections therewith. *Held*, that the city could not complain of the award, including compensation for the gasholder, on the ground that the company had no franchise to lay mains connecting the gasholder with its system.

Ingraham and McLaughlin, JJ., dissenting in part.

Appeal from Special Term, New York County.

Proceedings by the city of New York to acquire wharf property and land under water for the improvement of the water front of the city on the North river, between West Eighteenth and West Twenty-Third streets. From an order confirming the report of the commissioners of estimate and assessment, the city and the Consolidated Gas Company of New York both appeal. Affirmed on both appeals.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, LAMBERT, and HOUGHTON, JJ.

Shearman & Sterling (John A. Garver, of counsel), for Consolidated Gas. Co.

William B. Ellison, Corp. Counsel (Theodore Connoly, Charles D. Glendorf, and Thomas F. Noonan, on the brief, of counsel), for the city of New York.

CLARKE, J. This proceeding was instituted by the city to acquire title to certain lands and wharfage property for the so-called "Chelsea Improvement" on the North river water front between Eighteenth and Twenty-Third streets. This improvement is a part of the general plan for the enlargement of the dock system of the city, a part of which will result in the creation of a marginal street at the locus in quo 175 feet in width. All of the land taken was originally under water.

Parcel 33 upon the damage map was situated between West Nineteenth and Twentieth streets, on the east side of Eleventh avenue, and is part of a large plot owned by the Consolidated Gas Company. The part of the said lot to be taken extends from Eleventh avenue 231 feet 7 inches east on West Nineteenth street, and 160 feet 6 inches east from Eleventh avenue on West Twentieth street. It contains 36,071.36 square feet, and upon it is erected a gasholder occupying almost the entire space, a one-story brick valve house, a pump house, and part of a boiler house, through which runs the easterly diagonal bounding line of the lot to be taken. The plot owned by the gas company remaining contains 28,328.64 square feet, and will be transformed from an interior lot, upon the south side 231 feet 7

inches and upon the north side 160 feet 6 inches from Eleventh avenue, to a front lot upon a street 175 feet in width. For this damage parcel 33 the commissioners awarded $145,748 for the land taken, after deducting the benefit to the remainder of the plot left, and for the improvements $340,000, making a total of $485,748. Damage lot No. 16 is a triangle, situated on the north side of West Eighteenth street, whose base is 50 feet 10¼ inches, whose perpendicular is 131 feet 7⅜ inches, and whose diagonal is 141 feet 1⅛ inches. The apex of this triangle is 52 feet 4⅝ inches south of Nineteenth street. The plot to be taken contains 3,346.18 square feet, and there remains of the parcel from which it is taken 10,453.82 square feet. The result of the improvement will be to transform the lot from which the triangle is taken from an inside lot 275 feet from Eleventh avenue to a lot having a frontage of 141 feet 1⅛ inches upon the new street, 175 feet wide. For this triangular lot, No. 16, which in area contains about 1⅓ city lots, the commissioners awarded nothing, deeming that the benefit of the improvement to the portion of the lot remaining exceeded the damage caused by taking this triangle.

The value of lot 16 before the taking was testified by the city's witnesses to be $11,377. One of the company's experts valued it at $19,035.19, and the other at $19,907. The witnesses for the city gave the increase of value to the remaining portion of the parcel from which this triangle was taken, by reason of its frontage on the new marginal street, one of $32,548.11 and the other of $31,669.43. Thus, according to the testimony of the city's witnesses, the benefit to the part remaining, on account of the improvement, was upwards of $20,000 more than the value of the part taken. The witnesses called on behalf of the gas company did not take into consideration the increase in value on account of the remaining part of the land being on the new marginal street. The benefit to the part left upon this evidence far exceeding the value of the part taken, the commissioners awarded nothing for the part taken for damage lot No. 16. In regard to parcel 33 the witnesses for the Consolidated Gas Company did not take into consideration the increased value by reason of the new frontage. The witnesses for the city testified—one that the part not taken was increased in value by reason of this new frontage to the amount of $46,550.61; the other, $46,552.12.

One of the commissioners disagreed with his associates as to the measure of damages adopted—"namely, the assessment for benefit, which, under the circumstances in this case, I believe to be in violation of the provisions of the fourteenth amendment to the federal Constitution, for the reason that the rule adopted is not uniform; and I accordingly think that $13,384.72 should be allowed for parcel 16, and $521,695.44 for parcel 33." That is, this commissioner thought that $35,947.44 should be added to the award for parcel 33, excluding the benefit to be conferred from consideration. The gas company, while not contradicting the testimony of the increased value to the part remaining offered by the city, contends that the commissioners have followed an erroneous principle in their method of valuation, for the following reasons: (1) That the method of valuation provided in section 822 of the charter does not apply to this proceeding; (2) that.

the deduction for benefits, whether under section 822 of the charter or under the common law, is unconstitutional and in violation of the fourteenth amendment to the federal Constitution; (3) that the commissioners in this proceeding have no power to assess for benefit.

By section 822 of the charter (chapter 466, p. 351, of the Laws of 1901) in force at the time of the commencement of these proceedings it was provided that the said commissioner of docks may direct the corporation counsel to take legal proceedings to acquire property for the city—

"and the said corporation counsel shall take the same proceedings to acquire the same as are by law provided for the taking of private property in said city for public streets or places, and the provisions of law relating to the taking of private property for public streets or places in said city are hereby made applicable, as far as may be necessary, to the acquiring of the said property, rights, terms, easements and privileges, and the said commissioner of docks is also empowered to acquire in like manner the title to such lands under water and uplands, within the city of New York, as constituted by this act, as shall seem to said commissioner of docks necessary to be taken for the improvement of the water front. * * * The just compensation to which the owner of property taken under the foregoing provisions is entitled shall be ascertained and determined upon the following principles: If all of the property of such owner is taken, the compensation awarded shall be the fair and just value of the said property. If the property of the riparian proprietor has been built upon or improved, and if such buildings or improvements are upon a single tract contiguous to or adjoining lands under water, or which were originally under water, and used in connection therewith, and part only of such property is proposed to be taken, the fair and just value of the entire premises shall first be ascertained and then there shall be ascertained the like value of the premises in the condition in which they will be after the part is taken, and the difference in value, be it more or less than the separate value of the part taken, shall constitute the measure of compensation."

Section 970 of the charter, in force at the time, derived from section 964 of the consolidation act, authorizing the city to acquire title for the use of the public to all or any of the lands required for streets, provides that the lands, tenements, and hereditaments that may be required for such purposes may be taken therefor, and compensation and recompense made to the parties and persons, if any such there shall be, to whom the loss and damage thereby shall be deemed to exceed the benefit and advantage thereof, for the excess of the damage over and above the value of said benefit, and the city was authorized to make application for the appointment of commissioners of assessment to ascertain and determine the compensation and recompense which should justly be made to the respective owners, etc., of the lands and premises proposed to be taken for any of the purposes aforesaid, and to assess the cost of such improvement or such proportion thereof as the board of estimate and apportionment directs upon such parties and persons and lands and tenements as may be deemed to be benefited thereby.

The question here presented is: Where part of a parcel of private property is taken for a public improvement by the city, the cost of which improvement is to be paid, not by assessment, but by the city at large, is it lawful for the commissioners, in estimating the just compensation for said property so taken, to consider the special benefit accruing to the portion of the parcel left by reason of the improve-

105 N.Y.S.—48

ment? It must be clearly borne in mind that here the state, through one of its political subdivisions, the city of New York, is exercising for its own benefit that necessary adjunct of sovereignty which preceded all constitutions—the power of eminent domain. This is not a case where the right to exercise that power has been conferred upon a business corporation, a railroad, or a telegraph company. As to such the general condemnation law (section 3376 of the Code of Civil Procedure) expressly provides that in fixing the amount of compensation the commissioners shall not make any allowance or deduction on account of real or supposed benefit which the owners may derive from the public use for which the property is to be taken, or the construction of any proposed improvement connected with such public use. But section 3383 of the same Code excepts from said condemnation law—

"such acts and parts of acts * * * as may prescribe methods of procedure for such condemnation for any public use for, by, on behalf, on the part, or in the name of the corporation of the city of New York, known as the 'Mayor, Aldermen and Commonalty of the City of New York,' or by whatever name known, or by or on the application of any board, department, commissioners or other officers acting for or on behalf or in the name of such corporation or city, or where the title to the real property so to be acquired vests in such corporation or in such city."

The distinction in the application of the principle was pointed out by Judge Peckham in Bohm v. Metropolitan Elevated Railroad Co., 129 N. Y. 576, 29 N. E. 802, 14 L. R. A. 344, in these words:

"I should hesitate to admit the correctness of the claim made by the defendant that, where private property is taken by a mere business corporation as for a public use under the granted power of eminent domain, the Legislature could provide that such property could be paid for by benefits accruing to the landowners' adjacent property consequent upon the taking. This is the case in regard to municipal corporations, where land is taken for a public street or other public or municipal purposes, and where the benefit arising to the adjacent lands of the owner whose property is taken may be set off against the value of the land taken. So, in the case of property taken by the state for canal or other purposes, where the owner of the land taken was frequently paid its value by the benefits received in the adjacent land not taken."

Therefore, as this provision is expressly exempted from application to the city, and as we have found no provisions in any statute prohibiting deductions for benefits applicable to the city, there is no legislative prohibition of such deductions. The right to take private property for public use of the state or any of its political divisions by the right of eminent domain is a distinct and separate right from the power to take private property by taxation. Those provisions of law which authorize the taking of private property for public use and provide for the payment of the cost and expenses of such improvement by assessment combine the exercise of both rights. The two rights are absolutely distinct and based upon fundamentally different propositions, and unless this distinction is borne in mind inextricable confusion will follow the indiscriminate citation of authorities.

The right to take private property by eminent domain is coupled with the constitutional limitation that it can only be so taken upon just compensation. The right of taxation is coupled with no such limitation. There is a line of cases in this state which may be said to begin

with Livingston v. Mayor, 8 Wend. 85, 22 Am. Dec. 622, often cited to support the broad proposition that, when a part of a lot is taken, the benefit to the remainder may be offset against the damage for the part taken. Most of these cases were under statutes which provided for the payment of the improvement by assessment, and therefore involved the exercise of the two rights of eminent domain and of taxation. These cases are as follows:

In the Livingston Case, supra, which was in a street opening proceeding in the city of New York, the statute in force was chapter 86, p. 410, § 178, of the Revisal Laws of 1813, which provided for the appointment of commissioners who should estimate the damage and assess the costs of the improvements upon a limited area fixed in the act, and it was of this act that the Court for the Correction of Errors in 1831 said, by Mr. Senator Sherman:

"By the statute under which the commissioners proceeded it became their duty to estimate the damages for the ground taken for the street and to award to the owner a just compensation for the same according to the interest therein, and whatever such damages shall amount to is required by the act to be assessed upon and paid by the present owners of lots and houses fronting on the street or being within half blocks each way."

### And in which Chancellor Walworth said:

"It therefore makes no difference whether he is allowed the whole value of the property taken in the first instance and is assessed for his portion of the damage, or whether the one sum is offset against the other in the first place and the balance only is allowed."

Betts v. City of Williamsburgh, 15 Barb. 255, arose under the act of May 15, 1848 (Sess. Laws 1848, p. 97, c. 90), and by the twenty-fifth section thereof the assessors were required to apportion and assess the amount of the expenses and the compensation to the owners of land taken upon all the persons and lands to be benefited by doing the thing which the trustees have determined to be done, in proportion to the separate benefit or advantage which the same will be to the persons or lands upon equitable principles. The court said:

"If the value of the improvement shall not exceed the amounts offset against the value of his land taken, he is not benefited at all, and he could not be assessed for any additional sum according to the terms of the act."

Matter of Furman Street, 17 Wend. 649, was also a case where the commissioners of estimate and assessment were required to assess for benefit.

Granger v. City of Syracuse, 38 How. Prac. 308, involved the opening and widening of a street in the city of Syracuse. Judge Daniels said:

"And the expense attending it is not rendered exclusively local, as that which may be deemed local improvement is; but the commissioners appointed for its assessment are required to direct such part of it to be assessed upon the city at large and such part locally as they shall deem best (1 Laws 1857, p. 137, c. 63, § 4), and that course was pursued in the present instance, for the larger portion of the expenses is shown to have been assessed upon the city. * * * These commissioners awarded damages in three different instances for property required to be appropriated for the improvement of the street. * * * As to the other property taken for the improvement, they reported generally that the owners thereof are fully compensated by the bene-

fit to the adjoining land owned by them, respectively. This award was warranted in substance by the statute under which the commissioners proceeded, for that empowered them to deduct the benefits from the damages. And it has been settled that the owner's right to compensation, which the Constitution has carefully secured, may be satisfied in that way."

In People ex rel. Griffin v. Mayor of Brooklyn, 4 N. Y. 419, 55 Am. Dec. 266, the headnote is as follows:

"A statute which authorizes a municipal corporation to grade and improve streets, and to assess the expense among the owners and occupants of lands benefited by the improvement in proportion to the amount of such benefit, is a constitutional and valid law. Such an assessment is an exercise of the power of taxation vested in the state government, and is not in conflict with that part of the Constitution which declares that no person shall be deprived of life, liberty, or property without due process of law, nor shall private property be taken for public use without just compensation. Private property may be taken for public use either by taxation or by the right of eminent domain. Taxation exacts money from individuals as their share of a public burden, and the taxpayer receives or is supposed to receive just compensation in the benefits conferred by government and in the proper application of the tax. But where property is taken by right of eminent domain, it is taken, not as the owner's share of a public burthen, but as so much more than his share. Special compensation is therefore to be made. Taxation operates upon a community, or upon a class of persons in a community, and according to some rule of apportionment. The exercise of the right of eminent domain operates upon individuals, and without regard to the amount or value exacted from any other individual, or class of individuals. The power to tax implies a power to apportion the tax as the legislature shall see fit; and the power of apportionment has no limit where there is no constitutional restraint. And there is nothing in the Constitution of this state which requires that taxation shall be general, so as to embrace all taxable persons within the state, or within any district or territorial division of the state, or that it shall be equal, as in the case of a capitation tax, or that it shall be in proportion to the value of the property of the persons taxed, or that it shall not be apportioned according to the benefit which each taxpayer is supposed to receive from the object on which the tax is expended."

Ruggles, J., said (in referring to Livingston v. Mayor, supra), at page 436 of 4 N. Y.:

"This case affords an example of the exercise of the two powers before mentioned; that is, the power of eminent domain and the power of taxation —the first, in taking the land for the use of the street; and the second, in requiring contribution to defray the expenses of improving it from that class of persons on whom the burthen ought to fall. The case affirms the validity of street assessments in virtue of the latter power."

Long Island R. R. Co. v. Bennett, 10 Hun, 91, also illustrates the same principle.

In Howell v. City of Buffalo, 37 N. Y. 267, referring to People v. Mayor of Brooklyn, 4 N. Y. 419, 55 Am. Dec. 266, the court said:

"It is settled by the case above cited that an assessment for local improvements, when made upon the owner of lands benefited in proportion to the amount of such benefit, is an exercise of the taxing power."

Genet v. Brooklyn, 99 N. Y. 296, 1 N. E. 777, was also concerned with an assessment. The court there said:

"We think the argument fails in omitting to separate the two powers exercised by the Legislature in framing the act of 1868, namely, the power of taxation and the right of eminent domain. The imposition of local assessments for benefit is an exercise of the taxing power. The assessment imposed upon

the lands of the plaintiff's grantor was, as has been said, a tax, and represented the proportion of the aggregate sum which, in the judgment of the commissioners exercising by delegation the power to distribute the tax, should be charged upon the several parcels as their respective contribution to the aggregate expense.    Assuming that the charge exceeds the benefit, it was, nevertheless, made under the authority and direction of the legislative power. In respect to the owners of land taken, and also of lands assessed, it declared in substance that the claims for compensation ascertained by the mode defined by the Constitution should be satisfied in whole or pro tanto by the satisfaction in the manner pointed out by the statute of a valid and legal charge for benefit imposed upon his other lands.    This, we think, was just compensation within the principle of Livingston v. Mayor, supra, and the cases following it."

No one of these cases, therefore, is decisive of the matter at bar, because no assessment is to be laid, nor is the taxing power of the state applied.   The question here comes down to the proposition of what is just compensation, and the answer must be found by a different process of reasoning, for which I think we have sufficient authority in the books.

In Lewis on Eminent Domain (2d Ed.) § 471, it is said: ·

"In taking private property for public use, the state acts rightfully, and not as a wrongdoer.   It guaranties just compensation and nothing more.   *  *  *  It is self-evident that where a part of a tract is taken the just compensation cannot be determined without considering the manner in which the part is taken, the purpose for which it is taken, and the effect of the taking upon that which remains.   All the authorities concede this so far as damages to the remainder are concerned, and the justice of so doing may be taken for granted.   But what justice is there in considering the effect in so far as it produces damage only?  *  *  *  Where part of the tract is taken, just compensation would therefore consist of the value of the part taken and damages to the remainder, less any special benefits to such remainder by reason of the taking, and use of the part for the purpose; or, what is the same thing, it is the value of the whole tract irrespective of the taking, less the value of that which is not taken, taking into consideration the purpose for which the part taken is to be used, and excluding any but special benefits to the property which remains.   Just compensation, thus estimated, is as of money which makes the owner whole, and in respect to general benefits or damages resulting from the work or improvement leaves him in as good a situation as his neighbor, no part of whose property has been taken."

In Cooley on Constitutional Limitations (7th Ed.) p. 822, it is said:

"If less than the whole estate is taken, then there is further to be considered how much the portion not taken is increased or diminished in value in consequence of the appropriation.   But in making this estimate there must be excluded from consideration those benefits which the owner receives only in common with the community at large in consequence of his ownership of the other property, and also the incidental injuries to other property such as would not give to other persons a right to compensation, while allowing those which directly affect the value of the remainder of the land not taken.   *  *  *  And if an assessment on these principles makes the benefits equal the damages and awards the owner nothing, he is, nevertheless, to be considered as having received full compensation, and consequently as not being in a position to complain."

" 'Compensation,' as the term is now used in the various constitutional provisions against taking private property for public use without making just compensation, means recompense or remuneration for the property which is taken or injured."   15 Cyc. 638.

"In other states the courts have favored the view that taking into consideration the benefits which result from the improvement in estimating the damages to the remainder, when a part only of a tract of land is taken, is not

really deducting benefits or advantages from damages, but amounts to ascertaining whether there are damages." 10 Am. & Eng. Enc. of Law, 1177.

Mills on Eminent Domain, § 149, states:

"Power to Deduct Benefits from Compensation. This power must properly be considered as belonging to that of eminent domain, rather than to that of the taxing power. When no property is actually taken from the subject, and he is called upon to contribute his share of the expense of a public improvement, the call made upon him is properly a tax. When property is taken, and there is deducted from the value of the property taken, and for the incidental damage suffered, the benefit to the land remaining, that must be considered as a step in the process of arriving at the just compensation required to be made when property is taken by the exercise of the power of eminent domain. Constitutions do not generally provide that the value of the land shall be paid, but that just compensation shall be paid; just as regards the public as well as the individual."

Chancellor Walworth said in Livingston v. Mayor, supra:

"The owner of property is entitled to have compensation for the damages he sustained thereby; but, if the taking of his property for the public improvement is a benefit rather than an injury to him, he certainly has no equitable claim to damages."

Eldridge v. City of Binghamton, 120 N. Y. 309, 24 N. E. 462, was an action of ejectment to recover possession of a parcel of land in the city of Binghamton which formerly constituted part of the Chenango Canal. It was conceded on the trial that the usual and regular steps were taken by the state to condemn the land, and that on the 7th of September, 1838, Squires and Abbott, predecessors in title of the plaintiff came before the appraisers and presented their claim for damages occasioned by the appropriation of their land for the construction of the Chenango Canal. By the award of the canal appraisers claimants' damages were assessed at $2,500, but the benefit conferred upon them as the owners of the residue of the property were estimated as in excess of this amount, so that no damages over and above benefits were awarded. The state continued in possession until January 1, 1880, when the city, pursuant to chapter 391, p. 473, of the Laws of 1878, took possession of the premises and laid them out as a street, without exercising the right of eminent domain and without taking any title, except such as was released by said statute. Judge Vann said that the Revised Statutes in force at the time of the passage of the act for the construction of the Chenango Canal—

"provided that, when any lands appropriated by the canal commissioners to the use of the public shall not be given or granted to the state, it shall be the duty of the canal appraisers to make a just and equitable estimate and appraisement of the damages and benefits resulting to the persons interested in the premises so appropriated from the construction of the work for the purpose of making which such premises shall have been taken. 1 Rev. St. (8th Ed.) p. 731, pt. 1, c. 9, tit. 9, § 46. * * * Section 53 of said law, at page 732, provides: 'If the damage so estimated and appraised shall exceed the benefit it shall be the duty of the canal commissioners to pay the amount of such excess of the damage to the persons appearing by the determination of the appraisers to be thereto entitled.' Pursuant to the powers thus conferred the lands in question were appropriated; but the plaintiff insists that when the state takes the land in fee, even for a canal, the constitutional requirement as to just compensation can be satisfied only by a payment in money, as the state may subsequently abandon the canal, sell the land to a stranger, and thus deprive the owner both of the part taken and also of the benefits

to the remainder. The weight of authority seems to be in favor of the proposition that where land is so taken by the state, or by one of its political divisions, pursuant to its authority, for public use, the benefits may be set off not only against the damages to the remainder, but also against the value of the part taken."

Whitney v. State, 96 N. Y. 240, was also a case which grew out of the abandonment of the Chenango Canal and the release by the state of the portion of the canal lying within the limits of the city of Binghamton to said city as and for a public street. The commissioners in the original proceedings for the condemnation of the land for the purposes of the canal had appraised the damages for the property in question at $2,500, and determined that the benefits conferred upon the owners of the property were greater than the damages, and therefore awarded no damages to the owners. The court said:

"The claim of the appellants is founded on the ground that the state, after taking the land and paying no consideration therefor, except in the prospective benefits to be derived from the construction of the canal, abandoned the same and released to the city of Binghamton its rights in the land taken, and authorized the city to take and use the same for a public street."

In deciding against the claim the court said:

"No question is made but what the statutes in respect to the taking of the lands for canal purposes were fully complied with, and that the state became possessed of and entitled to the same according to law. The act of the appraisers in fixing the amount of damages sustained by the owners of the land was an adjudication of all the damages arising from the taking of the land, and upon well-settled principles would seem to be conclusive against the parties interested in the same."

I am of the opinion that the provisions of section 822 of the charter, hereinbefore quoted, are constitutional, lay down the proper rule, and are applicable to the case at bar—so far as plot 33 is concerned, clearly so, because in the most restricted sense of the word there were "improvements" upon said plot. I think they are also applicable to plot 16. The language is:

"If the property of the riparian proprietor has been built upon or improved, and if such buildings or improvements are upon a single tract contiguous to or adjoining lands under water, or which were originally under water, and used in connection therewith."

From the nature of the property under consideration in the section, I think it would be a too narrow construction to read the words "or improved" and "or improvements" as identical with "built upon" and "buildings." I think, when we are dealing with lands under water, or originally under water, that if they are brought to grade upon an established street they have been improved, within the meaning of the statute, so as to come within the purview thereof. If this section of the charter is not applicable to this proceeding, I do not know to what it could apply. This rule, providing how the just compensation to which the owner of property taken under condemnation proceedings for dock purposes is entitled should be ascertained and determined, was not contained in section 715 of the consolidation act (chapter 410, p. 201, of the Laws of 1882), the source from which the other provisions of section 822 of the charter were taken, but was

enacted for the first time in the first charter of Greater New York, being chapter 378, p. 1, of the Laws of 1897, when extensive improvements to the water front were in contemplation and had been authorized, and the reason therefor seems obvious from an examination of the statutory provisions.

From the time of the passage of chapter 86, p. 342, of the Revised Laws of 1813 the city has had a local condemnation law of its own for street opening proceedings; the substantial provisions of which are continued to the present time. The general provisions of this statute have been applied from time to time in proceedings to condemn property for other use than streets, as we have recently had occasion to point out in Matter of Commissioners of Public Works, 111 App. Div. 285, 97 N. Y. Supp. 503, affirmed 185 N. Y. 391, 78 N. E. 146. In street opening proceedings the general policy of the city has been to provide for the payment of the costs and expenses thereof by assessment upon the property benefited. Section 980 of the Revised Charter (chapter 466, p. 411, Laws of 1901) provides that the commissioners shall ascertain and estimate the compensation which ought justly to be made by the city to the respective owners, and also make a just and equitable adjustment and assessment of the benefits and advantages of such improvement to the respective owners, and prepare an abstract of their estimate and assessment; and section 970 thereof provides that the compensation and recompense made to the owners of lands taken shall be the excess of damage over and above the benefit, and that the cost of the improvement should be assessed upon the lands deemed benefited thereby. Land taken for dock purposes is not paid for by assessment. Section 822, however, provides that the provisions of law relating to the taking of private property for public streets or places in said city are made applicable, as far as may be necessary, to the acquiring of lands for dock purposes.

Inasmuch as the assessment proceedings provided for in street opening proceedings could not apply, and therefore the benefit and advantage could not be offset by way of assessment, the Legislature, realizing that, when the state or a political division thereof was concerned, it was a proper rule in estimating damages to consider benefits, inserted this principle in the dock condemnation section, whereby what I understand to be a general proposition of law has become crystallized in the statute. A statute is to be construed as a whole, and all of its provisions are to be given effect if possible. If the provision alluded to is not to be given effect in this proceeding, it must be for some other reason than is apparent from its language, which, to my mind, is so clear as not to need interpretation.

The gas company alleges that it is unconstitutional as in violation of the fourteenth amendment of the Constitution of the United States. The interpretation given by the Supreme Court of the United States to a provision of the Constitution is binding and controlling upon all courts. There is such a decision, which, it seems to me, is conclusive of the question under discussion. That case is Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270; Mr. Justice Gray writing for a unanimous court. That case, having arisen in the District of Columbia and under the laws of Congress applicable thereto, was con-

sidered under the fifth amendment of the Constitution of the United States, which provides that:

"No person * * * shall be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation."

This amendment has been held to apply to the statutes of the United States and the acts of officers thereof.

The fourteenth amendment provides:

"Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

And the Constitution of the state, in article 1, § 6, provides that no person shall "be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation," which is identical with the language of the fifth amendment of the Constitution of the United States.

In French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879, Mr. Justice Shiras said:

"Certainly it cannot be supposed that by the fourteenth amendment it was intended to impose on the states, when exercising their powers of taxation, any more rigid or strict curb than that imposed on the federal government by a similar exercise of power by the fifth amendment."

Therefore it would seem that a decision by the Supreme Court under the fifth amendment with respect to proceedings under an act of Congress applicable to the District of Columbia is a direct authority under the fourteenth amendment in proceedings under the laws of the state of New York. The statute under consideration, and whose constitutionality was attacked in the Bauman Case, was passed March 2, 1893 (27 Stat. 532, c. 197), entitled:

"An act to provide a permanent system of highways in that part of the District of Columbia lying outside of cities."

Section 11 thereof provides that:

"Where the use of a part only of any parcel or tract of land shall be condemned in such proceeding, the jury, in assessing the damages therefor, shall take into consideration the benefit (that) the purpose for which it is taken may be to the owner or owners of such tract or parcel by enhancing the value of the remainder of the same, and shall give their verdict accordingly, and the court may require in such case that the damages and benefit be found and stated separately."

The Court of Appeals of the District of Columbia decided that the owner of a parcel of land, a right of way over part of which is condemned under this statute, is entitled to recover the full value of the part taken. free of any deductions for special benefits to the remainder. In reversing this decision, after examining authorities in many states and the leading text-books on Eminent Domain, Mr. Justice Gray concluded:

"The right of eminent domain, as was said by the court, speaking through the Chief Justice, in a recent case, 'is the offspring of political necessity, and is inseparable from sovereignty unless denied to it by its fundamental law. It cannot be exercised, except upon condition that just compensation shall be

made to the owner; and it is the duty of the state, in the conduct of the inquest by which the compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but to the public which is to pay for it.' Searl v. Lake County School District, 133 U. S. 553, 11 Sup. Ct. 374, 33 L. Ed. 740. The just compensation required by the Constitution to be made to the owner is to be measured by the loss caused to him by the appropriation. He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public. Consequently, when part only of a parcel of land is taken for a highway, the value of that part is not the sole measure of the compensation or damages to be paid to the owner; but the incidental injury or benefit to the part not taken is also to be considered. When the part not taken is left in such shape or condition as to be in itself of less value than before, the owner is entitled to additional damages on that account. When, on the other hand, the part which he retains is specially and directly increased in value by the public improvement, the damages to the whole parcel by the appropriation of part of it are lessened. If, for example, by the widening of a street, the part which lies next the street, being the most valuable part of the land, is taken for the public use, and what was before in the rear becomes the front part and upon a wider street, and thereby of greater value than the whole was before, it is neither just in itself nor required by the Constitution that the owner should be entitled both to receive the full value of the part taken, considered as front land, and to retain the increase in value of the back land, which has been made front land by the same taking."

Among the other cases cited with approval was the opinion of Mr. Justice Cranch in Chesapeake & Ohio Co. v. Key, 3 Cranch, C. C. 599, Fed. Cas. No. 2,649, who said:

"If the jury had not been required by the charter to consider the benefit as well as the damages, they would still have been at liberty to do so; for the Constitution does not require that the value should be paid, but that just compensation should be given. Just compensation means a compensation that would be just in regard to the public, as well as in regard to the individual; and if the jury should be satisfied that the individual would, by the proposed public work, receive a benefit to the full value of the property taken, it could not be said to be just compensation to give him the full value. * * * The insertion, therefore, of that provision of the charter which requires the jury to do what they would be competent to do without such a provision, and which, in order to ascertain a compensation which would be just toward the public as well as the individual, they had to do, cannot be considered as repugnant to the Constitution."

There was no question of assessment involved under the section of the statute there construed. It was solely whether special benefits could be considered in arriving at a just compensation.

The learned counsel for the gas company claims that the Supreme Court receded from its position in the Bauman Case in Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. That case was on appeal from the Circuit Court of the United States for the Southern District of Ohio, the Constitution of which state in force at the time provided:

"And such compensation shall be assessed by a jury without deduction for benefits to any property of the owner."

Bauman v. Ross, supra, was not overruled, but, on the contrary, was cited with approval. What was decided in the Norwood Case was that the exaction from the owner of private property of the cost of a public improvement in substantial excess of the benefits accruing to him is,

to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation. And in French v. Barber Asphalt Paving Co., supra, the Supreme Court reasserted the doctrine of Bauman v. Ross, quoting in extenso therefrom, and limited Norwood v. Baker to the facts presented by it, and stated that the case had not overruled the previous authorities.

The complaint of the gas company that it is unequal and unjust, and therefore unconstitutional, that the damage to the part of its property which was taken is to be reduced by the amount of the benefit to the remaining property by the creation of this marginal street, while the owner of a parcel which is entirely taken receives full payment, and that the owner of property of which none is taken receives the full benefit of the street without payment therefor, is answered, first, by the fact that the question involved at bar is not one of taxation. The gas company is not paying for the improvement by way of assessment, while its neighbor escapes assessment. Its compensation is being made just by deducting its own special benefit from the amount to be paid for the part taken. And, second, it seems to be answered by cases in the Supreme Court of Massachusetts.

In Hilbourne v. Suffolk, 120 Mass. 393, 21 Am. Rep. 522, Endicott, J., said:

"The advantages that an abutter may receive from his location on a highway laid out, altered, or widened are none the less peculiar to him because other estates on the street receive special and peculiar benefits of a similar kind."

Allen v. Charlestown, 109 Mass. 243:

"The rule was clearly erroneous that no benefit should be set off which was shared in common with other estates on the highway from which no land had been taken. * * * The amount of a peculiar benefit accruing to property of which no part is taken may never be the subject of judicial inquiry, because, no land being taken, no proceedings for damages can be instituted, but the benefit it receives is none the less direct on that account."

In Cole v. Boston, 181 Mass. 374, 63 N. E. 1061, Barker, J., said:

"The damages to be awarded are the value of the property taken and of resulting damages, if any, to the remaining property not taken, less the amount of the special and peculiar benefit, if any, to the remaining property from the operation of the act. If the special benefit equals or exceeds the amount of the damages ascertained by this rule, the landowner is not entitled to a verdict for damages."

Mr. Justice Brewer, when a member of the Supreme Court of the state of Kansas, in Pottawatomie Commissioners v. O'Sullivan, 17 Kan. 58, stated the rule as follows:

"But this compensation is secured if the individual receive an amount which, with the direct benefits accruing, will equal the loss sustained by the appropriation. We of course exclude the indirect and general benefits which result to the public as a whole, and therefore to the individual as one of the public; for he pays in taxation for such shares in general benefits. But, if the proposed road or other improvement inure to the direct and special benefit of the individual out of whose property a part is taken, he receives something which none else of the public receive, and it is just that this shall be taken into account in determining what is compensation. Otherwise, he is favored above the rest, and, instead of simply being made whole, he

profits by the appropriation, and the taxes of the others must be increased for his special advantage. Upon general principles, then, and with due regard to right and justice, it should be held that the public may show what direct and special benefits accrue to an individual claiming road damages, and that these special benefits should be applied to the reduction of the damages otherwise shown to be sustained.   *   *   *   Surely this direct increase in value, this special benefit, resulting from the improvement the public is making, and for which it must be taxed, reduces the damages he has sustained."

It is my opinion, therefore, that, whether section 822 of the charter is to be applied or not, the general rule, upon principle and authority, where there is no constitutional or statutory provision to the contrary, supports the action of the commissioners in arriving at the just compensation to be paid to the owners for the portion of their land taken by the city in this proceeding, in deducting the amount found by them to be the special and peculiar benefit which the remaining land receives from the improvement.

The gas company further complains that by the taking of its gasholder it was obliged to construct a main from another of its sources of supply to provide gas for the district formerly served by this gasholder, and that it should have been allowed the expense incurred thereby. It received compensation for its gasholder as part of a going concern, and the compensation therefor is applicable to the expense of providing the substitute in its system. It would be as reasonable for a property owner whose house had been paid for to demand in addition thereto the cost of erection of a new house. The decision of the commissioners was correct.

It was also complained that it has not received an award for certain mains which it had in the street for the purpose of distributing the gas furnished by the holder. These mains have not been taken by the city, and the commissioners rightfully decided that the value thereof was no part of the compensation to which the company was entitled.

The city, upon its cross-appeal, complains of the award for the gasholder, upon the ground that it was treated by the commissioners as part of a going concern, and urges that the company had no franchises to lay mains connecting this gasholder with its system. No such question can be litigated in this proceeding. The gasholder and its connections had existed for many years in the conditions they were at the time the city instituted these proceedings, and the commissioners properly treated the situation as they found it.

The order appealed from should be affirmed, but, as both parties appealed, without costs to either.

HOUGHTON and LAMBERT, JJ., concur.

INGRAHAM and McLAUGHLIN, JJ., dissent as to damage lot No. 16 and damage lot No. 33, being of opinion that the appellant was entitled to a substantial award for those properties, without deduction for the assumed benefit in consequence of the increased value of the property remaining on account of the marginal street to be opened by the city of New York.